**Howard F. BOELTZ, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 85–2208.**

United States District Court, W.D. Pennsylvania.

Nov. 5, 1986.

John W. McTiernan, Pittsburgh, Pa., for plaintiff.

Albert W. Schollaert, Asst. U.S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

GERALD J. WEBER, District Judge.

This Social Security Appeal arises from the decision of the Secretary's Appeals Council to reverse the ALJ's award of disability benefits. The parties have filed cross motions for summary judgment and there are no disputed issues of material fact. We conclude that the decision of the Secretary, embodied in an Appeals Council Opinion which is characterized by inconsist-' encies and misstatements, is wholly unsupported by the evidence. Summary judgment will therefore be entered in favor of plaintiff and against defendant.

Plaintiff is approximately 55 years old and worked over 30 years in a steel mill, the last 17 years as a foreman. He has a high school education and no relevant work experience outside the mill. Plaintiff's employment in the mill ended March 3, 1984 after he suffered a severe cataplectic attack on the job, in which he collapsed and blacked out.

Sometime in 1981, plaintiff began experiencing episodes of drowsiness and loss of muscle control in his right side. He was diagnosed as suffering from narcolepsy, a disturbance which produces excessive inopportune sleep, and cataplexy, a disorder which causes a loss of muscle control when the subject is confronted with an emotional stimulus. Plaintiff also suffers from hypertension and a benign growth on the adrenal gland.

Plaintiff and his son testified at the administrative hearing to the nature, severity and duration of plaintiff's narcoleptic and cataplectic attacks. Plaintiff experiences 2–4 episodes of unplanned and inopportune sleep each day, varying in duration from a minute to an occasional episode of 1½ hours. Plaintiff also experiences a cataplectic attack on average of every other day, usually when he becomes excited, anxious or angry, and ranging in intensity from facial tics and tensing of his right side to total collapse and blackout.

A hearing on plaintiff's claim was held before an Administrative Law Judge (ALJ) on March 7, 1985. Following the reception of testimony and medical reports, the ALJ issued a decision finding plaintiff to be disabled within the meaning of the Act and therefore entitled to benefits.

The Appeals Council reviewed plaintiff's claim on its own motion, pursuant to authority under 42 U.S.C. § 405(b)(1). The Council concluded that the ALJ's decision was not supported by the evidence and therefore vacated the award and denied benefits. This appeal followed.

Claimant's counsel has made a number of sophisticated and well supported arguments in favor of reversal, including challenges to the Council's "own motion" review which on their face show some merit. However, we need not entangle ourselves in these since we conclude that the decision of the Appeals Council, with its raft of erroneous statements and inconsistencies, is wholly unsupported by the record.

We begin though with a legal issue regarding credibility. The ALJ who presided at the hearing concluded that plaintiff and his son were credible. However, the Appeals Council, reviewing a cold record, con-

cluded that the testimony of plaintiff and his son was not worthy of credence.

Credibility has traditionally and with good reason been the province of the factfinder who is able to view the witness. The ALJ has the added advantage of the opportunity to question witnesses at length and he exercised that right in this case. Because we review a typed record and not a human being, we may not second guess the original factfinder's judgment as to credibility. This rationale applies with equal force to a reviewing administrative body such as the Appeals Council. Absent *clear error, the judgment of the ALJ on credibility must be respected.* In the present case, the Appeals Council not only ignored this principle, through its mistakeridden opinion it provided a telling argument in favor of it.

The Council first noted that no doctor has observed plaintiff during a narcoleptic or cataplectic seizure. If this is intended to cast doubt on the veracity of the plaintiff or his doctors, we deem it improper. There is nothing in the medical records or the reports of two capable treating physicians to indicate that plaintiff's condition is a sham or fabrication.

The Council rejected the testimony of plaintiff's son as wholly unworthy of credence. The Council recites as contradictory the testimony of the plaintiff that he has experienced 3 cataplectic attacks in the previous year and a half, and the son's testimony that his father experiences cataplectic attacks almost daily. Such an inconsistency would be significant, if the witnesses' statements had not been lifted completely out of context. The most cursory view of the record reveals that plaintiff was referring to *severe* cataplectic seizures, those which cause complete collapse and blackout, when he described their frequency as 3 times in 1½ years (see Hrg. Trans. pp. 7–8). Elsewhere in the record plaintiff testifies to daily cataplectic episodes of varying severity, as does his son.

The only assertion unworthy of credence is that of the Council assuring plaintiff that it carefully reviewed the record.[1]

The Council also concluded that a 10 day log of narcoleptic and cataplectic episodes compiled by the plaintiff was unworthy of credence. The Council found it "incredible" that plaintiff could log the *exact* start and finish of spontaneous attacks. The record reveals that the plaintiff made no claims of exactitude, but testified that he kept as accurate a record as he could under the circumstances (see Hrg. Trans. pp. 9–10). We are aware that logs are a common tool employed by seizure victims and their doctors and we fail to understand the Council's incredulity or the grounds for it.

The Council also mischaracterizes the report of Dr. Kasdan. In rejecting the testimony of plaintiff and his son concerning the nature, extent and duration of attacks, the Council relied on Dr. Kasdan's report that these afflictions are controlled by medication. More accurately, Dr. Kasdan's report clearly states that plaintiff's condition is *partially* controlled, and both Dr. Kasdan and Dr. Santoro report that significant and frequent seizures persist despite medication. The Council also cites Dr. Kasdan as reporting plaintiff to be "neurologically intact." Actually the doctor states that "*aside from* the narcolepsy and cataplexy, his neurological examination is normal." (Emphasis added.) We can hardly view this as a ringing endorsement of plaintiff's good health.

The Council rejected the report of Dr. Santoro in its entirety, ostensibly because the doctor relied on a history provided by the plaintiff. Without rehashing the issue of the plaintiff's credibility, we will simply add that Dr. Santoro had the benefit of medical records, Dr. Kasdan's report, and physical examinations of the patient. His report cannot be rejected simply because he received information from the patient!

Finally, we note that the Council relied largely on the report of Dr. Kasdan which

---

1. In fact, the Council recites the alleged inconsistency described above, and then in the next paragraph of its opinion, recites without comment that portion of plaintiff's testimony which is consistent with his son's!

indicates that plaintiff is *not* totally disabled from *all* employment. But as the Secretary often reminds us in these cases, the conclusion of a doctor as to disability is not determinative. The claimant's condition must be evaluated in conjunction with such factors as age, skills, and availability of suitable jobs in the market, to determine whether "disability" as defined in the Act exists.

In support of its conclusion the Appeals Council noted that a.) many of plaintiff's seizures last only a minute and b.) are episodic in nature. As to the former, the Council ignores testimony that narcoleptic episodes can extend to 1½ hours and that cataplectic episodes can involve total collapse and blackout, even with medication. As to the latter, the episodic nature makes his condition no less disabling. Furthermore, the Secretary ignores the fact that, regardless of duration, the danger and debilitating effect of these seizures lie in their spontaneity, and in the weakened, dizzy feeling which follows. Plaintiff may experience an attack at almost any time, during any activity. He has experienced narcoleptic episodes in the midst of conversation, while entertaining company, and once, while driving a car. He has never driven since then. He has experienced cataplectic attacks on the job, while hunting and when confronted by any emotional stimuli, all without warning. Because of them, he was forced to give up his job and he has sacrificed his lifelong interest of hunting.

On this record, it is difficult to conceive of any setting where plaintiff could be gainfully employed. As Dr. Santoro rightly concludes, the danger his condition presents to himself and others, and the impossibility of avoiding stimuli in any job, disqualify him from employment. As a practical matter it is equally difficult to conceive of any employer tolerating an employee who falls asleep on the job two to four times a day, without warning and without control over his sleeping habits.

For the reasons stated above, we conclude that the Secretary's decision is not based on substantial evidence of record, and summary judgment will therefore be granted in favor of plaintiff. Benefits are to be awarded in accordance with the able opinion of the Administrative Law Judge.