**Thomas BOYES, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health & Human Services,\* Defendant–Appellee.**

No. 88–15342.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1989.

Decided Dec. 7, 1989.

As Amended Mar. 6, 1990.

As Amended April 11, 1990.

Rehearing En Banc Granted May 16, 1990.

---

\* Louis W. Sullivan, M.D., has been substituted for Otis R. Bowen, M.D., pursuant to Rule 43(c)(1) of the Federal Rules of Appellate Procedure.

Alan Bergman, Mendocino, Cal., for plaintiff-appellant.

Dennis J. Mulshine, Asst. Regional Counsel for Health & Human Services, San Francisco, Cal., for defendant-appellee.

Before HUG, FARRIS and REINHARDT, Circuit Judges.

## ORDER

The opinion filed December 7, 1989, and published at 891 F.2d 224, is hereby amended as follows: On page 229, in line thirteen of the first full paragraph of column two, the word "quite" is deleted.

## OPINION

REINHARDT, Circuit Judge:

Thomas Boyes appeals from the denial of disability benefits under the Social Security Act, 42 U.S.C. § 301 *et seq.* (1980). We have jurisdiction pursuant to 42 U.S.C. § 405(g) (1980). Boyes contends that the Administrative Law Judge ("ALJ") improperly disregarded the opinion of Dr. Mary Perry Miller, Boyes' treating physician, which concluded that he was disabled. We agree. The ALJ does not set forth specific, legitimate reasons for disregarding the treating physician's opinion, nor does he offer clear and convincing evidence that supports his decision to do so. We reverse and remand for payment of benefits.

## STATEMENT OF FACTS

Thomas Boyes was born on January 9, 1949, and is currently forty years old. He earned a high school equivalency degree (GED) in 1983, and after being honorably discharged from the Army, he held various jobs, including cashier, salesman, tire inspector, and hotel manager.[1] All of these jobs involved some contact with other people. In 1984, Boyes suffered severe injuries to his jaw as a result of a beating which occurred when he was in jail. His jaw was wired for about five months, and additional complications subsequently occurred. However, recent medical examinations demonstrate a relatively successful physical recovery. This claim for benefits, however, stems from a psychological rather than a physical disability.

The Psychological Evaluations

Boyes was examined by several psychologists, psychiatrists, and neurologists prior to the disability hearing. Each examination revealed some degree of depression, anxiety when among groups of people, and a desire to avoid interaction with others. Boyes repeatedly demonstrated a preoccupation with the 1984 jail house beating, which he sees as the source of his problems.[2] On the other hand, Boyes was punctual, neat in appearance, and cooperative. He displayed a low average level of intelligence, and showed no definitive signs of organicity.

Dr. Mary Perry Miller, a clinical psychologist at the Center for Special Problems, treated Boyes since March of 1986. Dr. Miller's evaluation of Boyes noted his claims of "overwhelming" anxiety and occasional violent tendencies when among groups of people, though no such acts of violence occurred after the initiation of therapy. On a day to day basis, Boyes stays in his room, and watches hours of television. He relies on his roommate to go shopping for him. Dr. Miller concluded that his symptoms were consistent with a diagnosis of "Major Depression," and added that "[a]lthough he is beginning to show some signs of improvement, with continued treatment, *he is not able to tolerate a work setting or work related responsibilities at this time. Further, it is unlikely that his condition will improve sufficiently in the next year to change his employability.*" (emphasis added).

Dr. Arthur H. Bazell of the University of California, San Francisco School of Medicine, interviewed Boyes on May 30, 1986, and filed a report with the Department of Social Services. He determined that Boyes' intelligence was "within normal lim-

---

**1.** The record of the ALJ hearing characterizes one of Boyes' past jobs as a "hotel manager." This may be either misleading or incorrect. The report of Dr. Alpert says that Boyes "worked doing maintenance at a hotel, and prior to that, managed bathhouses...."

**2.** Boyes claims that since the accident, he avoids contact with others as much as possible. He does not have contact with his family (both parents are dead) and the record indicates that his only other social interactions are with his roommate, and one friend whom he visits once a week.

its", and that his judgment and insights were fair. However, in evaluating his residual functional capacity, Dr. Bazell determined that "[i]n view of his anxiety and his depression, he would be unable to maintain adequate work attendance. Furthermore his irritability and hostility would make it impossible for him to get along with co-workers and supervisors, even with minimal contact. Mr. Boyes' prognosis is fairly good with continued medication and psychiatric supervision. *However, he is far from being rehabilitated to the point where he is able to support himself with gainful employment.*" (emphasis added).

In February of 1986, Boyes was examined by Dr. Richard Kamisarak, a Board-certified psychiatrist and neurologist. He also did not view Boyes' employment prospects positively: "At this time, Mr. Boyes' depressive symptoms and his pattern of avoidance would be limiting with respect to his ability to accept supervision and to relate to his fellow employees." [3] He also diagnosed dysthemic disorder, avoidant personality disorder, and noted persistent somatic complaints probably related to the 1984 assault. Boyes' affect was depressed, but he was not suicidal.

On March 27, 1987, the Secretary's medical advisor Dr. Thomas E.L. Singer testified. He did not examine Boyes. Rather, his testimony was based on the medical reports of the doctors mentioned above, and of others who made similar findings. He concluded that Boyes' depression was not major, and that his problems may be attributed to a long standing personality disorder. Despite Boyes' anger and history of fighting, Dr. Singer testified that the severity of his mental impairments was not sufficient to meet the requirements of the Regulatory Listing of Impairments.[4] Nevertheless, Dr. Singer concluded that the impairments were sufficiently serious to preclude Boyes from returning to his prior job.

Contrary to the opinion of the treating physician and others who examined Boyes, the ALJ concluded that Boyes would be able to work in a wide range of occupations at all exertional levels, as long as the work did not involve complex instructions, or more than minimal contact with others. Moreover, contrary to the testimony of even the Secretary's own medical advisor, he also determined that Boyes' condition did not prevent him from doing the type of work he had performed in the past. The ALJ points out that while some of the physicians (including the treating physician) concluded that Boyes was unable to work, those opinions were not determinative of the ultimate issue of disability. The ALJ held that the weight such statements are given depends on the extent to which they are supported by medical findings. The opinion stated:

"[A]s the credible and substantial medical evidence consistently reveals intact orientation and reality contact, normal intellectual function without organicity, and the absence of such vegetative depressive signs as a significant suicidal intent, it is found that the assessment of medical advisor Singer is consistent with the weight of the medical evidence which is thus found to document mental impairments only imposing moderate functional limitations ... opinions describing greater severity are considered not supported by the weight of the substantial evidence and therefore not persuasive."

On July 23, 1987, the Appeals Council refused to review Boyes' denial of benefits. This made the decision of the ALJ the final determination of the Secretary of Health and Human Services, and exhausted Boyes' administrative remedies. Boyes then brought an action in the U.S. District Court

---

**3.** This conclusion is conspicuously omitted from the ALJ's discussion of Dr. Kamisarik's findings.

**4.** This is a checklist used to evaluate impairments. If a specified number of disabilities are characterized in the more severe ranges, a claimant will be deemed automatically disabled.

Boyes fell one category short of qualifying for automatic disability. However, even if a claimant does not qualify for automatic disability, he may still be found disabled after a review of the treating physician's opinion, and those of other examining physicians.

pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) to obtain judicial review of the Secretary's judgment. The district court granted summary judgment to the Secretary, finding that the report of Dr. Miller, Boyes' treating physician, was "consistent with a finding of non disability." Boyes now appeals.

## THE STANDARD OF REVIEW

 The Court of Appeals reviews the district court's grant of summary judgment *de novo*. *Paulson v. Bowen*, 836 F.2d 1249, 1250 (9th Cir.1988). However, the scope of review of the ALJ's denial of benefits is limited. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985). To affirm, the ALJ's findings must be supported by substantial evidence, and the ALJ must apply the correct legal standards.[5] *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.1989). However, in evaluating the evidence, the reviewing court must look at the record as a whole, and not merely evidence that lends support to a finding. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir.1989).

██ It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson v. Perales*, 402 U.S. 389, 400, 91 S.Ct. 1420, 1426–27, 28 L.Ed.2d 842 (1971). If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d at 579. Though these general standards are deferential, more stringent standards apply when the trier of fact disregards the opinion of the treating physician.[6]

## THE TREATING PHYSICIAN'S OPINION

██ The medical opinions and conclusions of the treating physician are accorded special weight. *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.1988). The treating physician is in a unique position to know the patient as an individual, *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1988), and the continuity of his dealings with the claimant enhances his ability to assess the problems. In the absence of a contradictory opinion by another doctor, the ALJ can only disregard the treating physician's opinion by setting forth clear and convincing reasons of a contrary conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). If conflicting medical opinions exist, the ALJ still must set forth specific, legitimate reasons based on evidence in the record for disregarding the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

Moreover, the Court should be leery of the ALJ's use of conclusory language. The ALJ must "explain why they, rather than the doctors, are correct." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). *But see* 20 C.F.R. § 404.1527 (1988).[7]

## THE ALJ'S DECISION

The validity of the ALJ's opinion rests on its treatment of the doctors' findings and conclusions. The ALJ dismisses the treating physician's findings of more severe impairment as "not supported by the weight of the evidence and [therefore] not persuasive." This is the incorrect standard for making a finding inconsistent with the treating physician's. Depending on whether conflicting medical opinions have been offered, the ALJ is required either to set

---

5. "Substantial evidence means 'more than a scintilla', but 'less than a preponderance.' It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.1989) (citations omitted).

6. The Secretary relies upon *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir.1985), which held that the Secretary's findings are conclusive if supported by substantial evidence. However, *Taylor* does not involve the question of the weight the ALJ must give the treating physician's opin-

ion, and is therefore inapplicable to the present case.

7. This regulation states, "We are responsible for determining whether you are disabled. Therefore, a statement by your physician that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that supports a physician's statement that you are 'disabled.'" This regulation prevents physicians from making blanket, unsupported claims of disability, but does not allow

forth specific, legitimate reasons based on the evidence, or point to clear and convincing reasons that warrants rejecting that finding.

■ Neither standard was met in this case. The conclusions of Dr. Bazell and Dr. Kasimarik were consistent with Dr. Miller's findings. The ALJ opinion relies heavily on the opinion of Dr. Singer, the medical advisor to the Secretary. Upon reviewing the medical records, Dr. Singer concluded that Boyes' depression was only mild, and was not severe enough to qualify for automatic disability under the Regulatory Listing of Impairments. However, Dr. Singer at no point said that Boyes was able to work. In fact, his testimony directly contradicts the ALJ's finding that Boyes could return to his past employment settings:

Q: Doctor, if the, if we take one step further, if this gentleman were given a job, say the job he did before as a desk clerk or a tire inspector, do you forsee any sort of difficulty due to his mental status or his mental impairments?

A: I think, yes.

Q: What difficulties do you forsee?

A: I think he's a very angry man and I think he would get into fights pretty quickly. I don't think he would last very long. I think that's his personality disorder and I think that predated the assault.[8]

Of all the medical testimony the ALJ presented, only that of Dr. Heim, a Board-certified psychiatrist and neurologist, provides a conclusion that even arguably rebuts Dr. Miller's position. The ALJ opinion says Heim stated "that the claimant probably could understand and follow instructions and relate to fellow workers." However, the ALJ failed to quote the remainder of Dr. Heim's sentence, which says, "... but he has expressed anger towards superiors and authority, and would have conflict

with supervisors at this time, especially if things were not being done as he saw fit."

The ALJ has cut and pasted evidence in order to draw his own medical conclusions. Moreover, the ALJ's summaries of the physicians' reports were often misleading. For example, in reference to Dr. Miller's report, the ALJ opinion states, "... [Boyes] was not considered currently able to tolerate a work setting. However, Dr. Miller conceded that signs of improvement were evident and she reported that memory and reality testing were intact, the claimant had remained street drug and alcohol free...." This characterization of Dr. Miller's findings is misleading. It omits Dr. Miller's conclusion that Boyes will not be able to work for at least the next twelve months. Moreover, it is phrased to make one think these positive attributes existed *despite* the negative prognosis. In actuality, they were a considered *part* of the analysis Dr. Miller followed in reaching that prognosis. This phrasing discredits Dr. Miller's conclusions, and does not accurately reflect the record.

## CONCLUSION

The ALJ applied the incorrect legal standard in weighing the treating physician's opinion. Moreover, he neither presented specific, legitimate reasons nor pointed to clear and convincing reasons for rejecting the conclusions of the treating physician. The other physicians' findings, including those of the Secretary's advisor, supported the conclusion of the treating physician. The reasons the ALJ did give for denying coverage were of little or no relevance. We therefore reverse the district court's grant of summary judgment in favor of the Secretary.

■ Additionally, we remand for an award of benefits, rather than order further proceedings. When the ALJ fails to

the ALJ to circumvent the rule that specific, legitimate reasons are required to contradict the findings and conclusions of the treating physician.

8. Dr. Singer's conclusion that Boyes condition stems from a pre-existing personality disorder rather than the jailhouse beating is irrelevant, as eligibility for benefits is determined by the existence or nonexistence of a disability, not by etiology.

point to clear and convincing reasons for rejecting the conclusion of the treating physician, or provide specific, legitimate reasons based on evidence for disregarding that conclusion, and when the administrative record is fully developed, benefits should be awarded. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir.1989); *Winans v. Bowen,* 853 F.2d at 647 (9th Cir.1988). In this case, the administrative record is complete, and the disability in question has existed for over four years. Therefore, we remand this case for an award of benefits.

## REVERSED AND REMANDED

FARRIS, Circuit Judge, concurring:

Although benefits may be improperly awarded, I am compelled to concur in the result. The ALJ failed to discharge his obligation to explain his decision.

The treating physician concluded, among other things, that Boyes was not able to work for at least a twelve month period. Whether to award benefits is not the sole province of the treating physician. Whether benefits will be awarded is a legal decision to be made initially by the agency. The ALJ may then reject the agency finding, based upon all of the evidence, including the treating physician's opinion.

To disregard the treating physician's uncontradicted opinion of disability, the ALJ must point to clear and convincing reasons to support his contrary conclusion. *Magellanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989). If the treating physician's opinion is contested by opinions of other testifying doctors a lower standard applies. The ALJ may disregard it upon a showing of specific, legitimate reasons based on evidence in the record. *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983). In either case, the ALJ is precluded from disregarding the treating physician's opinion as "not supported by the weight of the substantial evidence." Specific reference to the record is required.

In theory, the treating physician is most familiar with the condition and capabilities of the applicant. Policy interests require that the ALJ make a clear statement as to why that advantage should not be recognized.

Here the Secretary relied upon *Taylor v. Heckler,* 765 F.2d 872, 875 (9th Cir.1985), where we held that a court shall not set aside a denial of benefits unless "the Secretary's findings are based on legal error or are not supported by substantial evidence in the record as a whole." We do not retreat from that position but the ALJ must recognize both rules in his review, not just the general rule of *Taylor.*

I would prefer to search the record for support of the ALJ's finding. The record reflects Dr. Singer's opinion that Boyes suffered from only a moderate depression and that the bulk of his difficulties were a result of a pre-existing personality disorder. Dr. Heim testified that Boyes could understand and follow instructions and relate to fellow workers. That Dr. Heim also concluded that Boyes might have conflicts with his superiors does not make him disabled. The record also includes Boyes' statement to one of the doctors that he was "flatly" not interested in working. That statement may have some bearing on Boyes' credibility. It also tends to support the testimony of Drs. Singer and Heim. However, I must agree with my colleagues that it is the trier of fact, not the appellate court that determines the weight to be given to the evidence. The failure of the trier of fact to articulate the basis for his findings with sufficient clarity causes me to concur with the majority decision.

## ORDER

Before: GOODWIN, Chief Judge, BROWNING, WALLACE, HUG, TANG, SCHROEDER, FLETCHER, FARRIS, PREGERSON, ALARCON, POOLE, NELSON, CANBY, NORRIS, REINHARDT, BEEZER, HALL, WIGGINS, BRUNETTI, KOZINSKI, NOONAN, THOMPSON, O'SCANNLAIN, LEAVY, TROTT, FERNANDEZ, and RYMER, Circuit Judges.

Upon the vote of a majority of nonrecused regular active judges of this court, it is ordered that this case be reheard by the en banc court pursuant to Circuit Rule 35–3.