**Gerald SANTIAGO, Plaintiff,**

v.

**Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.**

**No. C–02–04707 CRB.**

United States District Court,
N.D. California.

Aug. 13, 2003.

**1052**

Alex G. Tse, U.S. Attorney's Office, San Francisco, CA.

Candace C. Davenport, Attorney at Law, Rafael, CA.

Harvey Peter Sackett, Harvey P. Sackett, San Jose, CA.

**MEMORANDUM AND ORDER**

BREYER, District Judge.

Now before the Court are plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. Plaintiff Gerald Santiago ("Santiago") brings this action pursuant to section 205(g) of the Social Security Act, and 42 U.S.C. section 405(g) to obtain judicial review of the final decision by the Commissioner of the Social Security Administration finding that Santiago was not disabled and hence ineligible for Social Security disability insurance benefits.

## I. BACKGROUND

### A. Procedural History

Santiago filed an application for Supplemental Social Security Income benefits under Title II of the Social Security Act ("the Act") on April 30, 1999, alleging leg and

foot injuries. He met the disability insured status requirements under Title II of the Act from the time of the alleged onset date of his disability through December 31, 1996. His application was initially denied by the Social Security Commissioner, and following a denied request for reconsideration, an administrative hearing was held on September 25, 2000 before an administrative law judge, Charles D. Reite ("the ALJ"). The ALJ rendered an unfavorable decision on December 29, 2000. Santiago filed a Request for Review of the Hearing Decision, which was denied on July 30, 2002. This suit followed.

On May 27, 2003, Santiago moved for summary judgment. Defendant filed an opposition to Santiago's motion and filed a cross-motion for summary judgment. Plaintiff filed a reply memorandum on July 15, 2003. Pursuant to Civil Local Rule 16-1(e), the matter is submitted for decision by this Court without oral argument.

## B. Factual Background

### 1. *Plaintiff's Disability Claim*

In his application for benefits, Santiago alleges that he became disabled on January 2, 1990, when he fell from an approximately 30-foot ladder and scaffolding while he was working as a painter for Sonoma State University. Transcript of the Record of the Social Security Administration Proceedings ("TR") at 128. He landed on his left knee and his right foot was caught in the rungs. (TR at 128.) Santiago sustained injuries to his knee, foot, back, legs, ankle, arm, wrist, and hand. (TR at 115.) He underwent a series of surgeries on his knee and foot, which affected his mobility and ultimately rendered him incapable of returning to his job. He also claims to have developed severe mental incapacities, such as depression, personality and anxiety disorders, and difficulty dealing with people. (TR at 264–67.)

### 2. *Santiago's Testimony*

Santiago is presently 55 years old; he was 44 at the time his alleged disability commenced. (TR at 13.) His highest level of education is a Bachelor's degree of Business Administration from San Jose State University. (TR at 296.) He worked as a painter and a working foreman. (TR at 14.) At the hearing, Santiago testified that he has constant pain in his right foot and that he limps severely when he walks. (TR at 32.) He testified that he can stand for ten minutes, that he has difficulty walking over three to four blocks, and that he has difficulty driving because he experiences pain when he steps on the gas pedal. (TR at 32–33.) The constant pain, which he estimates to be a magnitude of eight out of ten, persists for 24 hours per day. (TR at 34.) Santiago testified that he suffers from depression, an inability to concentrate due to the constant pain, and difficulty sleeping. (TR at 37.) The pain has kept him from performing normal everyday activities, and he relies on friends, neighbors, and family members to pick up groceries, to do his laundry and to help him clean his living quarters. (TR at 39.)

Santiago also testified that he has a small home in Hawaii where he goes for three months in the winter to soak his back in the warm springs. He explained that he is able to travel despite his financial limitations by purchasing a cheap ticket and by relying on friends to take him around. (TR at 59–61.) He was also taking generic muscle relaxers, Vicodin, Flexeril, Codeine, and was prescribed marijuana, but he no longer takes any of them. (TR at 39–40.)

### 3. *Medical Evidence*

The earliest medical report relating to Santiago's complaints is dated February 13, 1990 by Dr. Jerome Beatie, M.D.,

shortly after Santiago sustained his injuries. (TR at 215.) Dr. Beatie diagnosed plaintiff with mild to moderate tenderness over the Gredes Tubercle on the left knee. (TR at 216.) X-rays demonstrated a significant change at the first metatarsophalangeal joint. Dr. Beatie opined that there was a contusion in the left knee, a sprain of the right ankle, and a contusion to the fifth metatarsal. (TR at 216.) He indicated that he was not that concerned about the injury and recommended that Santiago incorporate an exercise regimen. (TR at 216.)

Santiago returned to Dr. Beatie on February 26, 1990, complaining of increasing pain in his foot and his left knee. (TR at 214.) X-rays revealed tissue swelling around the left knee. (TR at 214.) His first surgery was performed on May 23, 1990, an excision of a bursa overlying the pre tibial tubercle area and a portion of the tibial tubercle. (TR at 212.) Six days later, Dr. Beatie opined that plaintiff could probably return to light duty in another two weeks, and could return to his previous job at Sonoma State University in about five weeks. (TR at 210.) Santiago recovered from the surgery fairly satisfactorily, but he experienced increasing pain in the first metatarsophalangeal joint of the right foot during the course of trying to restore the functionality of his left knee. (TR at 208.) Dr. Beatie diagnosed Santiago as having post-traumatic arthritis on his right foot, which was exacerbated by his fall. (TR at 209.) Dr. Beatie recommended a second surgery, an arthrodesis of the first metatarsophalangeal joint, to remove this last source of his complaints and in an effort to get him back to work. (TR at 209.)

Santiago underwent this procedure on August 29, 1990. (TR at 204.) Four weeks after the surgery, Santiago returned to Dr. Beatie complaining of continuing pain. (TR at 203.) Examination revealed some swelling, and using a wooden soled shoe was inadequate in reducing Santiago's discomfort. (TR at 203.) He was placed in a short weight bearing cast that included the injured toe, and it was anticipated that he would have to undergo three more weeks of recovery. (TR at 203.) Santiago's condition only improved minimally. He continued to complain of pain to Dr. Beatie on October 24, 1990, and he was placed in a short leg weight bearing cast for another month. (TR at 201.)

The cast was removed on November 27, 1990 and check-up x-rays were obtained. (TR at 200.) Dr. Beatie opined that there is "no evidence of healing" and recommended further surgery, requiring 24–36 hours of hospitalization. (TR at 200.) This procedure was performed on January 4, 1991. (TR at 198.) Santiago was placed in a walking cast for six to eight weeks. (TR at 200.)

On March 12, 1991, over one year after he sustained his injuries, Santiago continued to have difficulty with stiffness of the foot and the toe. (TR at 196.) Furthermore, his injuries were aggravated when he slipped and fell at Safeway. (TR at 196.) Dr. Beatie anticipated that Santiago would have another three to four weeks of disability before he could return to work. (TR at 196.) On April 9, 1991, Dr. Beatie remarked that Santiago would be unable to return to any kind of work that would require him to be on his feet for any extended period of time because of persistent foot and knee pains and that it would be unsafe because he could not wear shoes. (TR at 194.)

On November 5, 1991, orthopedic surgeon Ernest Weitz, M.D., examined Santiago and opined that after three operative procedures, the development of back pain and sciatica, and wrist pain, Santiago is "no closer to going back to work than he was the day after he injured his foot in

January, 1990." (TR at 186.) He added, "[w]hen one tries to understand this entire situation, it leaves one with a sense of utter futility, recognizing that he is really not better off. As a matter of fact, he is worse off than he was when he fell in December 1990." (TR at 186.) Dr. Weitz evaluated Santiago as falling within Category "D," disability precluding heavy lifting and repeated bending and stooping with the additional inability to do any prolonged walking or ladder climbing or walking on uneven ground and inability to kneel and squat. (TR at 188.)

A January 1992 x-ray report of Santiago's toe and foot by Dr. Beatie found that his arthrodesis was in an excellent position. (TR at 191.) Nonetheless, a year and a half later, following another x-ray, Dr. Beatie opined that Santiago has such difficulty walking that "he can't do any work requiring him to be on his feet for any extended period of time." (TR at 189.)

Santiago saw Dr. Jerry Roberts on January 31, 1995. Dr. Roberts observed that Santiago developed a "great deal of shortening" of the right great toe. (TR at 222.) Roberts remarked: "There is absolutely no question that he has a markedly altered gait and there is no question that it is altered enough that he is putting a great deal of stress on his lumbosacral spine." (TR at 222.) Dr. Edward N. De Mayo, on August 1997, added that Santiago was limping severely, and that he continues to have pain with weight bearing, and tends to walk in a marked external rotation. (TR at 226.)

In December 1999, Santiago saw Eugene Schoenfeld, M.D. According to Dr. Schoenfeld's written report, Santiago stated that he was currently employed as a photographer. (TR at 295.) He also reported that Santiago had been employed as a photographer for 35 years and that the longest job Santiago had ever held was his 35 years as a photographer. (TR at 296.) Dr. Schoenfeld also remarked that Santiago has "writing, hiking" as his current hobbies. (TR at 296.)

### 4. Mental Impairment

Santiago saw his treating therapist Alexander Binik ("Binik") on a near weekly basis from April 23, 1993 to December 20, 1993, and from January 2, 1995 to January 30, 1995. (TR at 264.) In a report prepared in 1999, Binik concluded that during the period he saw Santiago, Santiago had significant problems with depression, anxiety, borderline and avoidant personality disorders, intermittent explosive disorder and pain disorder associated with a general medical condition. (TR at 266.) He added that Santiago was neglected by his parents and was affected by traumatic and emotionally abusive relationships which also added to feelings of worthlessness and a general distrust of others. (TR at 264.) Because of Santiago's general distrust of others' intentions and his own feelings of worthlessness, Binik concluded that Santiago was unable to interact with other people effectively. (TR at 266.)

## II. STANDARD OF REVIEW

 This Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g) (2003). This Court's jurisdiction is limited to determining whether the Social Security Administration's denial of benefits is supported by substantial evidence in the administrative record. *Id.* A district court may overturn a decision to deny benefits only if it is not supported by substantial evidence or if the decision is based on legal error. *See Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.1995); *Magallanes v.*

*Bowen,* 881 F.2d 747, 750 (9th Cir.1989). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews,* 53 F.3d at 1039. Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *See id.; Magallanes,* 881 F.2d at 750. The decision of the ALJ will be upheld if the evidence is "susceptible to more than one rational interpretation." *Andrews,* 53 F.3d at 1040. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony. *See Lewis v. Apfel,* 236 F.3d 503, 509 (9th Cir.2001). If the evidence can reasonably support either affirmance or reversal, a court may not substitute its judgment for that of the Commissioner. *Id.* Plaintiff bears the burden of establishing that the ALJ's decision was not based on substantial evidence or that the ALJ's decision was based on legal error. *See generally Andrews,* 53 F.3d at 1039; *Magallanes,* 881 F.2d at 750.

## III. DISCUSSION

### A. The ALJ's Decision

▮ In determining whether a claimant is disabled and entitled to benefits, the ALJ conducts a five-step sequential inquiry. 20 C.F.R. § 404.1520 (2003); 20 C.F.R. § 416.920. At the first step, the ALJ considers whether the claimant is engaged in substantial gainful activity. If the claimant is not engaged in substantial gainful activity, the second step involves a determination of whether the claimant has a severe impairment (i.e., an impairment that has a significant effect on the claimant's ability to function). If the claimant has a severe impairment, the third step requires the ALJ to determine whether the claimant has a condition which meets or equals the conditions outlined in the

Listings of Impairments in Appendix One of the Regulations. If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the Listing of Impairments, then the claimant is presumed disabled, and the ALJ need not make any specific finding as to his ability to perform past relevant work or any other jobs. If the claimant does not have such a condition, the fourth step involves a determination of whether the claimant is capable of performing his past relevant work. Finally, if the claimant is not capable of performing his past relevant work, the ALJ must determine whether the claimant is capable of performing other work which exists in substantial numbers in the national economy. 20 C.F.R. §§ 404.1520(b)-(f); §§ 416.920(b)-(f).

In this case, the ALJ determined that Santiago was not disabled between February 1, 1991 to December 31, 1996, when he last met the disability insured status. Based on Santiago's testimony and the absence of any earnings since 1991, the ALJ first found that the plaintiff had not been engaged in any substantial gainful activity. (TR at 14.) Second, the ALJ concluded that Santiago suffered from severe impairments of the right great toe, status post failed arthrodesis and insertion of a sliding graft from the metatarsal across the MP joint, left knee injury, status post surgical excision of the bursa and loose ossicle of the left tibial tubercle, and mild to moderate degenerative changes of the lumbar spine and depression. (TR at 15.) Third, although Santiago's conditions were "severe," they did not meet or equal any listed impairment as outlined in the Listings of Impairments in Appendix One of the Regulations. (TR at 15.) Fourth, Santiago was unable to perform his past relevant work. (TR at 17.) Finally, the ALJ determined that during the relevant period Santiago was capable of performing other work which exists in substantial

numbers in the national economy. Cited jobs included general assembler and miscellaneous machine operator. The ALJ found that Santiago had the ability to lift/carry and push/pull up to ten pounds frequently and up to twenty pounds occasionally and stand/walk up to two hours during an eight hour workday with mild limitation on concentration, persistence and pace. (TR. at 16–17.)

**B. Step Three: Whether Santiago's Impairments Equal a Listed Impairment.**

Santiago claims that the ALJ committed legal error under step three because he did not adequately explain his determination that Santiago's impairments did not equal any of the listed impairments in Appendix One.

Medical equivalence will be found "if the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526. Equivalence is determined on the basis of a comparison between the "symptoms, signs and laboratory findings" about the claimant's impairment as evidenced by the medical records "with the medical criteria shown with the listed impairment." *Id.* Congress requires that the combined effect of all the individuals impairments be considered, "without regard to whether any such impairment if considered separately" would be sufficiently severe. 42 U.S.C. § 423(d)(2)(c).

Santiago contends that he equals either or both section 1.03 and/or 1.13 of the relevant impairments under Appendix One, which provide:

1.03: Arthritis of a major weight-bearing joint (due to any cause): With history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination.
1.13: Soft tissue injuries of an upper or lower extremity requiring a series of

staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored, or expected to be restored within 12 months after onset.

Santiago argues now, and argued before the ALJ, that "[w]hile a toe is not listed as a 'major joint', a non-union of the big toe still makes weight bearing impossible as if it were an ankle or knee. The results are the same." (TR at 176, 179–80.) Moreover, the medical records reflect that Santiago's condition has lasted over 12 months.

The ALJ made the following finding as to equivalence:

The medical evidence fails to support a finding that claimant's medically determined impairments met or equaled any other listed impairment in Appendix 1 to Subpart P of Social Security Regulation No. 4 on or before December 31, 1996. Specifically, I find the medical evidence consistent with mild restriction of activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace with no evidence of episodes of decompensation of extended duration.

(TR at 15.)

■ The Ninth Circuit has held that "in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990). A mere statement that a claimant does not equal the listing is insufficient. *See id.; see also Nevis v. Apfel,* 2000 WL 342665 *8 (N.D.Cal.2000) (reversing the AL's denial because the ALJ did not offer an explana-

tion as to her findings in step three of the evaluation process).

In *Marcia*, for example, the claimant identified evidence to establish equivalency of his impairments or a combination of his impairments to a particular listed impairment. *Marcia*, 900 F.2d at 176. The ALJ made the following finding as to equivalence: "The claimant has failed to provide evidence of medically determinable impairments that meet or *equal the Listings* to Subpart P of Regulation 4 or the duration of the requirements Act." *Id.* at 176 (emphasis in original). The Ninth Circuit found this explanation insufficient and remanded the matter to the Secretary for proper consideration of step three evidence. *Id.*

 Here, Santiago presented a plausible theory of equivalency to the ALJ. (TR at 176, 179–80.) The ALJ, however, did not provide any explanation responsive to Santiago's argument. The ALJ cited no medical authority to support his conclusion, nor did he compare the symptoms, signs and laboratory findings about the impairments as required by 20 C.F.R. section 404.1526. There was no discussion on how Santiago's alleged impairments failed to meet the listed impairments identified by Santiago. *See Galaspi–Bey v. Barnhart*, 2002 WL 31928500 *3 (N.D.Cal.2002) (reversing the ALJ's denial of benefits because the ALJ's discussion "makes no mention of section 1.01 et seq. of the Listings, and does not compare the medical evidence in the record to the criteria in the Listings").

Defendants contend that, under the Ninth Circuit's ruling in *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir.1990), the summary of the medical evidence provided by the ALJ is "an adequate statement of the foundations on which the ultimate factual conclusions are based." In *Gonzalez*, the court concluded that the ALJ's four page *evaluation* of the evidence was an adequate foundation "on which the ultimate factual conclusions are based." *Id.* at 1201; *see also Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir.2001) ("*Marcia* simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.' "). Here, in contrast, the ALJ's recitation of the evidence does not provide an adequate foundation for his findings. The Court simply cannot determine from the ALJ's opinion how he came to the conclusion that Santiago's "severe" impairments did not equal sections 1.03 and 1.13.

 The Commissioner's failure to articulate some basis for his step-three conclusion necessitates a remand to the Secretary for additional proceedings. The decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of this Court. *See Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). Remand is appropriate when the Secretary is in a better position than this Court to evaluate the evidence. *See McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where a rehearing would simply delay receipt of benefits, reversal is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 636 (9th Cir.1981). The ALJ did not sufficiently discuss and evaluate the evidence before it concluded that claimant did not equal a listed impairment. This case should be remanded to the Secretary because he is in a better position to evaluate the medical evidence.

## C. The ALJ Properly Limited Treating Therapist's Opinion

 With respect to Santiago's mental limitation, the ALJ credited treating ther-

apist Binik's June 1999 opinion "only to the extent that the claimant is suffering from depression secondary to this orthopedic pain between February 1, 1991 and December 31, 1996." (TR at 16.) The ALJ found Binik's diagnosis to be "exaggerated and inconsistent with the other medical records and claimant's own testimony." (TR at 16.) Santiago argues that the ALJ improperly limited Binik's expert testimony, and that the ALJ did not fulfill his mandate under 20 C.F.R. section 404.1520(a).

The ALJ's decision was not in error. First, as Binik is not a medical doctor or a licensed psychologist, his opinion is not entitled to the deference accorded "accepted medical source[s]" under 20 C.F.R. section 404.1513(a).

Second, the ALJ explained the basis for his rejection of Binik's conclusion. This explanation included the fact that Binik had found Santiago to have a "GAF of 38" which indicates " 'some impairment in reality testing or communication' or 'major impairment in several areas, such as work or school, family relations, judgement, thinking or mood.' " (TR at 16.), yet there was no evidence in the record which suggests Santiago had such a major impairment. The ALJ noted that there is no "medical source," that is, acceptable medical records, *see* 20 C.F.R. § 404.1513(a), that reflect that Santiago suffered from a severe mental impairment.

Third, the ALJ noted that because there was no medical source reflecting Santiago's alleged severe mental impairment, his claim of such an impairment was based primarily on his testimony as to the severity of his pain. The ALJ found Santiago's testimony not credible on this issue. (TR at 16). The ALJ's finding was based on substantial evidence and was not in error.

## D. The ALJ's Hypothetical Question to the Vocational Expert

Santiago alleges that the hypothetical questions did not fully and adequately reflect Santiago's medical condition, in particular, his inability to walk and stand up to two hours per day and the degree of his depression.

[15–18] "If a claimant does not have the residual functional capacity to perform past relevant work, then it is the Commissioner's burden at step five to establish that the claimant can perform other work." *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1278–79 (9th Cir. 1987). The ALJ may use a vocational expert to determine whether a claimant can use his work skills in other work. 20 C.F.R. §§ 404.1566(e) & 416.966(e). Hypothetical questions asked of the vocational expert must "set out all of the claimant's impairments." *Gamer*, 815 F.2d at 1279. "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.1984).

■ The ALJ posed two hypothetical questions to the vocational expert regarding jobs that the plaintiff could do given his residual functional capacity and vocational profile. (TR at 69.) First, the vocational expert was asked what kind of employment is available for an individual with the same age, training, education, and background as the plaintiff with the capacity to push, pull and carry up to ten pounds frequently and twenty pounds occasionally and a limitation on walking and standing to two hours per day and a "mild limitation on concentration, pace, and persistence." (TR at 69.) The second hypothetical increased the limitation to push, pull and carry to fifteen pounds. In response to the first hypothetical, the voca-

tional expert opined that plaintiff could perform general assembly jobs available at the light and sedentary level in the regional and national economy. (TR at 70.) He further testified that, regionally, there are about 12,200 such jobs available at the light level and 2,700 at the sedentary level, and 716,000 available jobs nationally at the light level and 156,000 at the sedentary level. (TR at 70.) The vocational expert also opined that plaintiff could perform semiconductor wafer breeders. In response to the second hypothetical, he opined that plaintiff could perform these same jobs but only at the sedentary level. (TR at 71.)

Contrary to Santiago's contention, the instant case is distinguishable from *Light v. Social Security Administration,* 119 F.3d 789 (9th Cir.1997). In *Light,* the hypothetical question posed was unacceptable because it did not include the claimant's documented illiteracy and evidence of his severe concentration problems. *Id.* at 793. Here, the hypothetical did include the limitations on walking and standing, and since the ALJ properly concluded that Santiago did not suffer from a severe mental impairment, the hypothetical questions included all of Santiago's limitations as the ALJ found supported by the record. The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *See Martinez v. Heckler,* 807 F.2d 771, 773 (9th Cir.1986). Rather, the ALJ is "free to accept or reject these restrictions ... as long as they are supported by substantial evidence." *Id.* at 774.

## IV. CONCLUSION

The ALJ committed legal error at step three by failing to adequately explain why Santiago's physical limitations did not equal the listings under Appendix 1.03 and 1.13. Accordingly, the Court REMANDS this case to the Secretary for proper consideration of step three equivalence. In all other respects, Santiago's motion for summary judgment is DENIED and defendant's motion is GRANTED.

**IT IS SO ORDERED.**