Donna J. SWENSON, Widow of
Herman J. Swenson,
Plaintiff–Appellant,

v.

Louis W. SULLIVAN,*
Defendant–Appellee.

No. 88–4032.

United States Court of Appeals,
Ninth Circuit.

Argued March 8, 1989.

Submission Withdrawn March 8, 1989.

Resubmitted March 29, 1989.

Memorandum April 10, 1989.

Order and Opinion May 23, 1989.

---

* On March 9, 1989, Louis W. Sullivan was substituted as Secretary of Health and Human Services for Otis Bowen.

Robert P. Stephens, Spokane, Wash., for plaintiff-appellant.

Richard H. Wetmore, Asst. Regional Counsel, DSHS, Seattle, Wash., for defendant-appellee.

Before WRIGHT, SNEED and ALARCON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Donna J. Swenson appeals from the district court's grant of summary judgment for the Secretary of Health and Human Services upholding a denial of the application of her deceased husband, Herman W. Swenson, for disability insurance benefits for a period from October 16, 1979 to April 13, 1983. Following our remand in 1984, the Secretary determined that Swenson became disabled on April 13, 1983, his 55th birthday. Mrs. Swenson contends that the Secretary erred: (1) by failing to specify reasons for discounting her husband's testimony that he suffered from disabling fatigue beginning in October 1979, (2) by failing to specify reasons for discounting testimony of Swenson's treating physician and two examining psychiatrists that he was disabled during the period in dispute, (3) by accepting a vocational expert's testimony that substantial numbers of jobs existed that Swenson could perform, despite the expert's further testimony that Swenson could not perform as many jobs as could a person deemed disabled under the Medical Vocational Guidelines, and (4) by applying the grids mechanically in selecting his 55th birthday as the onset date of his disability despite finding no material change in his condition between February 1982 and December 1985.

We reverse because the Secretary erred in failing to specify reasons for discounting Swenson's testimony of disabling fatigue and for accepting vocational testimony inconsistent with the grids. *See Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 583 (*"Varney I"*), *aff'd on rehearing,* 859 F.2d 1396 (9th Cir.1988) (*"Varney II"*); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir.1988). Because there was uncontradicted testimony that Swenson would be disabled if his testimony were

credited, the record is sufficiently developed to warrant remand for payment of benefits for the disputed period. *See Varney II,* 859 F.2d at 1400.

## FACTUAL BACKGROUND

Herman W. Swenson applied for social security disability insurance benefits on April 29, 1980. He claimed a disability onset of October 16, 1979, the date on which he stopped working due to arteriosclerotic heart disease.

At an administrative hearing in February 1982, an administrative law judge found that Swenson had a seventh grade education, considered a limited education for purposes of applying the Medical Vocational Guidelines and that he was semiskilled. Dennis Pollack, a psychologist and vocational expert, testified that one with Swenson's vocational background and apparent exertional and nonexertional limitations could perform hundreds of jobs in the national economy. But if Swenson's energy level were as low as he claimed, there would be no jobs he could perform. Pollack added that Swenson's testimony suggested that he might have organic brain damage. At the ALJ's direction, Pollack made a series of tests following the hearing and recommended further evaluation.

The ALJ chose not to order further evaluation. He found that Swenson was unable to return to his work as a carpenter. The ALJ concluded, however, that Swenson was not disabled because the grids did not direct a finding of disability, Pollack testified that there were a substantial number of jobs Swenson could perform, and the nonexertional limitations Pollack identified in post-hearing tests did not significantly reduce the number of jobs Swenson could do.

This panel reversed. We noted that the ALJ's opinion as to available jobs did not constitute substantial evidence, and concluded that (1) the ALJ had failed to develop the record on Swenson's alleged brain damage, and (2) the vocational testimony on which the ALJ had relied was not based on the totality of Swenson's nonexertional impairments.

In December 1985, the ALJ who presided at the initial hearing conducted a second hearing. He issued a recommended decision finding that Swenson became disabled on his 55th birthday, April 13, 1983. The Appeals Council adopted that decision with modifications.

Swenson appealed the Secretary's denial of his application for disability benefits. The district court adopted the ALJ's decision as to available jobs, and granted the Secretary's motion for summary judgment.

## EVIDENCE OF DISABILITY

### A. *Claimant's Medical History*

Swenson was 51 in October 1979 when he stopped working due to cardiac pain. He had undergone single coronary bypass surgeries in 1973 and 1974, then returned to work. In April 1980, he underwent a third surgery to bypass the two grafts and a third artery that had become occluded.

Swenson's family has a significant history of heart disease. Both parents died of heart trouble, his father at age 55 and his mother at age 39. Of nine brothers and sisters, four had died of heart related problems by 1981, and three were living with heart problems.

Swenson suffered also from organic brain damage probably caused by oxygen deprivation resulting from his cardiac condition or triple bypass surgery.

He died of cardiac arrest on November 16, 1986. His wife was substituted as party plaintiff.

### B. *Claimant's Testimony of Fatigue*

At both hearings, Swenson testified that he stopped working in October 1979 because he felt cramping pains in his chest and pains in his left arm similar to those he had felt during the periods preceding his previous heart surgeries. He had dizzy spells, had to lie down at work, and was awakened from sleep by sharp chest pains. He did not feel better after his surgery in April 1980.

At the February 1982 hearing, he testified that on a good day, about once a week,

he could walk a few miles, but that on a bad day, which he experienced frequently, he could walk only a half mile. On bad days, he would awaken, have coffee and lie down.

At the 1985 hearing, Swenson testified that he continued to suffer from intermittent fatigue, sometimes accompanied by a burning or tightening sensation in his chest, particularly when he exerted himself slightly or felt minor stress. He frequently had to lie down after such minor chores as walking to the mailbox or scraping snow from his car. He had no hobbies or interests other than visiting with his family and neighbors. Previously, he had kept busy with work, fishing, hunting, and building things at home.

## C. Medical Evidence of Fatigue

Dr. Hays, the treating physician and a general practitioner, reported in 1980 that Swenson suffered from chest pains and severe shortness of breath. Having seen Swenson on several occasions through September 1985, the doctor concluded that Swenson was "completely disabled" due to "chronic fatigue which ha[d] existed for years and inability to perform to any extent for a long period of time...." Hays added that he was unable to specify actual limitations since he had not performed relevant tests.

Dr. Stifter, a cardiovascular and internal medicine specialist, and Dr. Johnson, a diagnostician and internist, concluded independently that, based on treadmill tests and examinations in September 1980 and April 1981, Swenson had excellent functional aerobic capacity. Stifter concluded that Swenson was capable of engaging in light work that involved lifting up to 25 pounds, although he did not comment on Swenson's complaints of fatigue and depression and that he had lost his notes of Swenson's physical examination. Johnson apparently found the complaints of fatigue credible having concluded that Swenson could perform only sedentary work.

Psychologists Pollack and Roubus held the opinion that Swenson had suffered moderate brain damage. Pollack found in 1982 that Swenson's depression was likely to interfere with his day-to-day functioning. One test showed that Swenson had a personality profile that suggested proneness "to somatization[1] of stress." Roubus found from that test and an examination in April 1985 that Swenson demonstrated a moderate level of depression. He noted that Swenson's brain damage had significantly impaired his concentration, memory, and learning ability.

Dr. Bot, a psychiatrist, reviewed the Pollack and Roubus reports and examined Swenson in August 1985. Bot concluded that Swenson suffered from mild, atypical organic brain syndrome, compensated well, and did not require treatment. Bot found fatigue, memory loss, and left chest pain, but could not say whether they were due to psychological factors.

Dr. Green, a psychiatrist, testified at the 1985 administrative hearing. He noted that the tests performed by Pollack and Roubus, suggesting significant depression, conflicted with Bot's conclusion that evidence of depression was insufficient to support a diagnosis. Green found Bot's assessments more compelling and concluded that any depression was mild and did not interfere significantly with Swenson's ability to work. Green acknowledged that the medical reports were replete with Swenson's subjective reports of a low energy level, but had no adequate explanation for Swenson's claimed low energy since Swenson's good performance on treadmill and cardiovascular tests indicated an absence of physical causes. Green further found that Swenson's ability to perform at a consistent pace without an unreasonable number and length of rest periods was moderately to markedly impaired.

## ANALYSIS

### I. Standard of Review

We review *de novo* a grant of summary judgment. *Paulson v. Bowen*, 836 F.2d

---

**1.** Somatization means "the production of physiological dysfunction often resulting in irreversible structural changes by the exaggeration and persistence of an emotional state." *Webster's Third International Dictionary* (1976).

1249, 1250 (9th Cir.1988). We will affirm the Secretary's denial of disability benefits if his findings are supported by substantial evidence and he applied correct legal standards. *Davis v. Heckler*, 868 F.2d 323, 325 (9th Cir.1989); *Swanson v. Secretary of Health and Human Services*, 763 F.2d 1061, 1064 (9th Cir.1985). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), but "less than a preponderance." *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir.1988). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427. We review the administrative record as a whole. *Winans v. Bowen*, 853 F.2d 643, 644 (9th Cir. 1987).

## II. Burdens

To qualify for benefits, a claimant must show that a medically determinable physical or mental impairment prevents him from engaging in substantial gainful activity and that the impairment is expected to last for a continuous period of at least twelve months or result in death. 42 U.S. C. § 423(d)(1)(A) (1982). The claimant carries the initial burden of showing that he is disabled. *Id.* at § 423(d)(5) (1982); *Hoffman v. Heckler*, 785 F.2d 1423, 1424 (9th Cir.1986). Where the claimant establishes his inability to do his prior work, the burden shifts to the Secretary to show that the claimant can perform other substantial gainful work that exists in the national economy. *Hoffman*, 785 F.2d at 1425.

## III. Claimant's Testimony of Fatigue

■ Appellant contends that the ALJ erred in deciding that Swenson could perform light work between his claimed disability onset date in 1979 when he was 51

and his 55th birthday, the onset date accepted by the Secretary. He urges and we agree that the ALJ erred by failing to specify reasons for discounting his testimony as to disabling fatigue.

The Secretary need not believe a claimant's testimony of pain or other symptoms if unsupported by objective medical findings establishing a medical impairment that reasonably could be expected to produce the claimed pain or other symptoms. 42 U.S.C. § 423(d)(5)(A) (1984).[2] If a claimant submits objective medical findings of an impairment that would normally produce a given symptom, but testifies that he experiences the symptom to a greater degree than would normally be expected, the Secretary may disbelieve that but must make specific findings justifying his decision. *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 583 ("*Varney I*"), aff'd on rehearing, 859 F.2d 1396 (9th Cir.1988) ("*Varney II*"); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir.1986) (per curiam).

That a claimant testifies that his symptom is more disabling than would normally be expected gives no valid reason to discount his testimony. *See Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275, 1279 (9th Cir.1987); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir.1986).

■ The Secretary's reasons for rejecting excess symptom testimony must be clear and convincing if medical evidence establishes an objective basis for some degree of the symptom and no evidence affirmatively suggests that the claimant was malingering. *See Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir.1984). While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms. *See Sprague v. Bow-*

---

**2.** Section 423(d)(5)(A) provides:

An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ...; there must be medical signs and findings ... which show the existence of a medical impairment that results from anatomical, physiological, or psychologi-

cal abnormalities which could reasonably be expected to produce the pain or other symptoms alleged....

The section, amended in 1984, applies to determinations made prior to January 1, 1987. Pub. L. 98–460 § 3(a)(3).

*en*, 812 F.2d 1226, 1231 (9th Cir.1987) (regarding testimony of pain and depression).

■ The ALJ found in 1982 that Swenson was credible but "fe[lt] himself more limited than medical evidence establishe[d] that he [was]." [3] The ALJ also concluded that Swenson's "own statement of impairments ... do[es] not preclude sedentary or light level work activity" (*id*.). That conclusion was incorrect. Pollack, the only expert to give an opinion of Swenson's functional ability assuming an energy level as low as Swenson claimed, believed that Swenson, if as fatigued as claimed, would not be able to engage in any work.

Swenson's testimony of chronic fatigue was supported by substantial medical evidence, including the opinion of his treating physician. In addition, Pollack's and Roubus's psychological reports established that Swenson suffered from moderate depression probably due to organic brain damage. Both found that Swenson's depression could interfere with his day-to-day functioning. The ALJ found Swenson credible, and no doctor suggested that Swenson was malingering. The Secretary's failure to specify adequate reasons for rejecting Swenson's testimony of fatigue was legal error and requires reversal. *See Varney I*, 846 F.2d at 583; *Sprague*, 812 F.2d at 1231.

## IV. *Vocational Expert's Testimony*

Reversal is compelled also because we reject the vocational expert's testimony as inconsistent with the framework created by the grids.

The grids are an administrative tool on which the Secretary must rely when considering claimants with substantially uniform levels of impairment. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.1988). When a claimant's nonexertional limitations significantly limit the range of performable work, the Secretary may not rely only on the grids but must take the testimony of a vocational expert. *Id*.

The instructions provide that, when the grids are "not fully applicable" because of the existence of nonexertional limitations, they nonetheless provide "a framework for consideration of how much the individual's work capability is ... diminished ... by the nonexertional limitations." 20 C.F.R. Part 404, Subpart P, App. 2 § 200.00(e)(2). *See also Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir.1984). The ALJ must use the grids as a framework in cases where no vocational expert testifies. *See Desrosiers*, 846 F.2d at 577. However, no court has decided by a published opinion the question whether an ALJ must use the grids as a framework when a vocational expert does testify.

■ Regulatory language supports the position that an ALJ may not find from vocational testimony that a claimant, deemed disabled under the grids, nonetheless could perform a substantial number of jobs and not be disabled. *See* 20 C.F.R. Part 404, Subpart P, App. 2, §§ 200.00(d), (e). We interpret the regulations to require the Secretary to reject vocational testimony that is inconsistent with the grids' overall framework. We agree that an ALJ need not agree with everything said by an expert witness to find that his testimony constitutes substantial evidence regarding disability. *Russell v. Bowen*, 856 F.2d 81 at 83 (9th Cir.1988). Some inconsistencies may lead one to question the witness's expertise. If an expert testifies that a claimant would be disabled under the grid best approximating the totality of his exertional and nonexertional limitations, the Secretary must reject, or specify reasons for accepting, any significantly inconsistent testimony, such as that the claimant nonetheless could perform a substantial number of jobs.[4]

Jay Toews, a vocational expert, testified that several thousand jobs existed in the

---

3. The ALJ did not assess Swenson's credibility at the 1985 hearing.

4. "Disabled" as that word is used in the Social Security Act, is a term of art; for a person to be found disabled, he must be able to perform only a few "jobs that exist in very limited number or in relatively few geographic locations." *Walker v. F. David Mathews*, 546 F.2d 814 at 818–19 (9th Cir.1976) (quoting 1967 U.S.Code Cong. & Admin.News, pp. 3197–98 (1967)).

state that a person with Swenson's impairments as described by Dr. Green (i.e., not taking into account evidence of fatigue and depression) could perform. They were routine, low-stress, and unskilled, and included stationary security guard, toll booth operator, ticket taker, car lot attendant, and some bench work categories. Toews expressly concluded that such jobs existed in "significant numbers." He testified, however, that one aged 52 with the impairments described by Dr. Green could perform fewer jobs than could one deemed disabled under the grids for persons aged 55 or older who had the same exertional and vocational limitations as Swenson but who lacked his nonexertional limitations. Toews agreed that "the limitations identified by Green are more significant than three years of age."

■ Toews' identification of at least five job categories and thousands of jobs performable by Swenson in the state, without more, would be substantial evidence of the existence of performable jobs. *See Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir.1986). The validity of that testimony is dubious because of his statement that those jobs were fewer than the jobs performable by a person deemed disabled under the grids.

The ALJ should have clarified and developed the record. *See Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1381 (9th Cir.1984); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). He erred by not clarifying the inconsistency in Toews' testimony or giving reasons for accepting the assertion that thousands of performable jobs existed. That requires that Toew's testimony be discounted. Without it, the Secretary lacked credible evidence of the existence of a substantial number of jobs that Swenson could perform. The judgment must be reversed on this ground.

## V. *Remand*

■ The decision whether to remand a case for additional evidence or simply to award benefits is in our discretion. *Varney II*, 859 F.2d at 1399. We may direct the award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed. *Id.* We have said:

> In cases where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will ... take that testimony to be established as true.

*Varney II*, 859 F.2d at 1400.

There are no outstanding issues here to preclude us from making a disability determination on the merits. The Secretary failed to give reasons for discounting Swenson's pain testimony. That testimony, in light of Swenson's family history of fatal heart disease, was credible. We accept as true Swenson's testimony of disabling fatigue. *See Varney II*, 859 F.2d at 1400. Because of Pollack's uncontradicted testimony that, if Swenson's testimony were true Swenson would be disabled, we will not remand for further findings. Swenson became disabled on October 16, 1979, his claimed onset date. *See id.*

More evidence and legal argument would not likely shed light on Swenson's functional capacity during the period at issue which commenced ten years ago with subsequent substantial deterioration in Swenson's condition and in his death in 1986. *See Davis v. Heckler*, 868 F.2d 323, 328 (9th Cir.1989).

We reverse and remand for payment of benefits.

## VI. *Attorney's Fees*

■ Swenson requests attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 (1982 & Supp. IV 1986). It allows prevailing plaintiffs in these cases to recover fees "unless the court finds that the position of the United States was substantially justified...." 28 U.S.C. § 2412(d)(1)(A); *Hammock v. Bowen*, 867 F.2d 1209, 1216 (9th Cir.1989). Swenson prevailed on the merits. *See, e.g., Gregory*

*v. Bowen,* 844 F.2d 664, 667 (9th Cir.1988). Whether the Secretary's position was substantially justified will be determined by the district court. *Pierce v. Underwood,* — U.S. ——, 108 S.Ct. 2541, 2547, 101 L.Ed.2d 490 (1988); *Hammock,* 867 F.2d at 1216. We remand to that court to determine that matter.

REVERSED AND REMANDED.