52 F.3d 336
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Teresa VIVAS, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-56505.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 6, 1995.*
Decided April 17, 1995.
 
 Before: McKAY,** REINHARDT, AND FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Teresa Vivas challenges the denial of her application for disability benefits under Title II and Title XVI of the Social Security Act. Ms. Vivas claims that she is unable to work due to her back impairment and anemia. The administrative record contains objective evidence showing three herniated discs and stenosis in her back, severe anemia, and a severe mental impairment. In addition, Ms. Vivas' treating physician expressed his opinion that she was unable to perform any type of work because of these impairments. At her administrative hearing, Ms. Vivas testified to persistent pain and fatigue, as well as to marked limitations in her activities of daily living. Despite Ms. Vivas' testimony and her treating physician's report, the Secretary concluded that Ms. Vivas was not disabled, and the district court granted summary judgment in the Secretary's favor. We reverse and remand for payment of benefits.
 
 I.
 
 3
 The Secretary's first error was her failure to provide adequate reasons for rejecting the claimant's subjective complaints. During her administrative hearing, and in questionnaires completed during the application process, Ms. Vivas described numerous symptoms associated with her degenerative back impairment and anemia. Specifically, the claimant testified to severe pain in her back, fatigue, stomach pain, nausea, vomiting, diarrhea, fainting spells, the need to take frequent naps, and abnormally frequent menstruation. Although the claimant's daughter submitted a report corroborating these symptoms, the ALJ concluded that Ms. Vivas' complaints were "not credible."
 
 
 4
 For the Secretary to find that a claimant's complaints are not credible, she must provide "specific, cogent reasons for the disbelief." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir.1990). In Bunnell v. Sullivan, 947 F.2d 341 (9th Cir.1991), this court held that the Secretary may not discredit a claimant's testimony as to subjective symptoms, merely because they are unsupported by objective evidence. Id. at 343. Rather, the adjudicator must make specific findings that support his conclusion that the claimant's complaints are not credible. Id. at 345. Where the medical evidence establishes "an objective basis for some degree of the symptom and no evidence affirmatively suggests that the claimant was malingering," the Secretary can only reject the claimant's testimony regarding symptoms for "clear and convincing" reasons. Swenson v. Sullivan, 876 F.2d 683 (9th Cir.1989); Gallant v. Heckler, 799 F.2d 1403, 1407 (9th Cir.1986).
 
 
 5
 In this case, the record contains objective evidence demonstrating the existence of an underlying back impairment and anemia. A CAT scan report from July 1987 showed "severe" herniation of the disc at the L5-S1 level with accompanying stenosis, moderate herniation at the L4-L5 level with accompanying stenosis, and mild herniation at the L3-L4 level. In addition, laboratory test results establish that Ms. Vivas suffers from severe anemia. The record contains no evidence that affirmatively suggests that Ms. Vivas was malingering. Thus, the Secretary was required to produce "clear and convincing" reasons for rejecting the claimant's complaints. Swenson, 876 F.2d at 687.
 
 
 6
 The ALJ based his rejection of Ms. Vivas' testimony regarding her subjective complaints and symptoms on purported "inconsistencies" between her testimony at the administrative hearing and written reports submitted prior to the hearing. The ALJ pointed, in particular, to a written statement contained in a report that Ms. Vivas submitted at the time of her request for an administrative hearing. This report, completed on March 11, 1992 with the assistance of an interpreter, contains the following statement:
 
 
 7
 I don't go outside my house alone. Someone needs to be with me whenever I must go out. I am unable to do any household chores. I used to cook and go outside my house more often. Now I can't do any of these activities. I am unable to sit or stand for prolonged periods of time.
 
 
 8
 The ALJ found this written statement to be inconsistent with the claimant's hearing testimony. In particular, he referred to her testimony that she goes for walks three blocks away from her house, that she sometimes attends church, and that she makes her own breakfast and lunch.
 
 
 9
 Ms. Vivas' statement that she used to cook "more often" does not appear to conflict with her testimony that she fixes her own breakfast and lunch. Both Ms. Vivas and her daughter noted that the foods she makes are bought already prepared, since she has difficulty cutting or lifting pots and pans. Her "cooking" is limited to putting prepared food into the oven. The ALJ also referred to Ms. Vivas' testimony that she takes walks and goes to church, apparently believing this statement to be in conflict with her March 11 statement that she does not go outside alone. However, Ms. Vivas testified that her mother and sister take her to church. Ms. Vivas did not testify as to whether she takes walks by herself or with others.[1]
 
 
 10
 It is thus unclear why the ALJ believed Ms. Vivas' testimony to be in conflict with the written reports. All the written reports are consistent with Ms. Vivas' testimony in their descriptions of the symptoms arising from her anemia and back impairment, including back pain, fatigue, and the need to take naps. Ms. Vivas' written reports and hearing testimony are also consistent in describing her inability to perform household chores, such as cleaning and going shopping, by herself. The written statement from the claimant's daughter corroborates the symptoms and limitations that Ms. Vivas described.
 
 
 11
 Despite the objective evidence documenting the existence of severe underlying impairments, and despite the overwhelming consistency of statements concerning her subjective complaints, the ALJ found all these complaints to be "not credible." To the extent that there are any inconsistencies in Ms. Vivas' statements, these inconsistencies are miniscule. They do not constitute a "clear and convincing" basis for rejecting the claimant's complaints.
 
 II.
 
 12
 The Secretary's second error was her failure to provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting the opinion of Ms. Vivas' treating physician Chester R. Barnes, M.D. On two occasions, in 1987 and again in 1991, Dr. Barnes wrote that Ms. Vivas was "totally" and "permanently" disabled from any employment. The Administrative Law Judge, in concluding that Ms. Vivas was not disabled, stated that Dr. Barnes' opinion was entitled to "no weight." While recognizing that Dr. Barnes' diagnosis of severe anemia was supported by laboratory test results, the ALJ rejected Dr. Barnes' opinion entirely due to the absence of "objective findings to substantiate the claimant's musculoskeletal impairment."
 
 
 13
 Although the Secretary generally has discretion to resolve conflicts in the evidence, the opinion of the claimant's treating physician must be given "special weight." Burkhardt v. Bowen, 856 F.2d 1335, 1339 (9th Cir.1988). Under our cases, the Secretary may only reject the treating physician's opinion if she provides "specific and legitimate" reasons for doing so and those reasons are supported by "substantial evidence" in the record. Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1987); Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983). The rationale behind this rule is that the treating physician has a greater opportunity to observe the claimant, and to familiarize himself with the claimant's condition, than does an examining physician. Winans, 853 F.2d at 647.
 
 
 14
 The reasons underlying the treating physician rule apply with particular force in this case. Between 1987 and 1992, Dr. Barnes was the claimant's only treating physician. Records from 1990 to 1992 show that Dr. Barnes saw Ms. Vivas frequently over this period--generally at least twice per month--for her back impairment and for her anemia. His treatment notes document symptoms including spasms and tenderness in the back, joint pain, abdominal pain, weakness, nausea, and headaches.
 
 
 15
 In this circuit, the Secretary may not reject the treating physician's opinion merely because it is unsupported by sufficient objective findings--rather, she must give weight to the "subjective aspects" of the treating doctor's opinion. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir.1988). From his frequent and steady contacts with the claimant, Dr. Barnes was in a better position than anyone else to evaluate the severity of Ms. Vivas' symptoms, as well as their impact on her ability to function.
 
 
 16
 In any event, the record here does contain objective evidence demonstrating the existence of both severe anemia and a serious back impairment. As the ALJ acknowledged, Dr. Barnes' written statements were accompanied by laboratory results documenting Ms. Vivas' anemia. Although the ALJ's decision states that Dr. Barnes' opinion regarding Ms. Vivas' musculoskeletal impairment was unsupported by objective findings, the record does in fact contain objective evidence of a severe underlying back impairment--specifically, the CAT scan report demonstrating three herniated discs with stenosis in Ms. Vivas' back. Both Dr. Barnes and Lloyd Tom, M.D., who examined the claimant in 1987, noted that Ms. Vivas' condition is a degenerative one.
 
 
 17
 In concluding that Ms. Vivas was not disabled, the ALJ relied on reports from Yahya Lavi, M.D. and Rocely Ella Tamayo, M.D., each of whom examined the claimant only once. Under the "one-shot" rule that this circuit has adopted, the Secretary must ordinarily accord greater weight to the opinion of the treating physician than to the opinions of physicians who examine the claimant only once. Murray, 722 F.2d at 501-02. Here, the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence in the record, for giving preference to the conclusions of one-time examiners over those of the claimant's treating physician. Moreover, the consultative examiner's reports demonstrate that these doctors were unaware of essential information regarding Ms. Vivas' condition. Although both the examining physicians relied on x-ray reports, there is no indication that they were aware of the serious problems revealed only by the CAT scan. Thus, the reports of these examining physicians do not approach the substantial evidence necessary to reject the treating physician's opinion.
 
 
 18
 The Secretary also relies on reports from Dr. Tom who examined Ms. Vivas twice in 1987. These reports provide no basis for rejecting Dr. Barnes' opinion in 1991. Dr. Tom concluded that the claimant was unable to perform heavy work, and noted the possibility that her condition would deteriorate. Where the claimant has a degenerative condition, the most recent medical report is the most probative. Stone v. Heckler, 761 F.2d 530, 532 (9th Cir.1985). Moreover, Dr. Tom's report was written before Ms. Vivas' anemia became a serious problem and thus does not address the effects of this condition at all. The opinion of a physician who considers the cumulative impact of all of a claimant's impairments may not be rejected based on the findings of a doctor who considered only one of the claimant's impairments. Sprague v. Bowen, 812 F.2d 1226, 1231 (9th Cir.1987); Beecher v. Heckler, 756 F.2d 693 (9th Cir.1985). Because Dr. Tom did not consider the combined impact of all Ms. Vivas' present impairments, his opinion cannot be said to conflict with or undermine that of Dr. Barnes. See Sprague, 812 F.2d at 1231.
 
 III.
 
 19
 The Secretary erred in rejecting Ms. Vivas' testimony regarding her subjective symptoms and in failing to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Barnes' opinion. Where no useful purpose would be served by remanding for further proceedings, benefits should be awarded. See Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990) (remanding for payment of benefits where Secretary did not provide adequate reasons for disregarding physician's opinion); Varney v. Secretary, 859 F.2d 1396, 1401 (9th Cir.1988) (remanding for payment of benefits where Secretary failed to provide adequate reasons for discrediting claimant's testimony). If the Secretary had credited Ms. Vivas' statements and Dr. Barnes' opinion, she would have been compelled to find that Ms. Vivas was disabled. We therefore reverse and remand to the Secretary with instructions that Ms. Vivas be found disabled and awarded benefits.
 
 
 20
 REVERSED and REMANDED for payment of benefits.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 The Honorable Monroe G. McKay, Senior Circuit Judge for the Tenth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The ALJ's decision refers to other supposed contradictions in Vivas' testimony, without providing a cogent explanation of why he believed the statements in question to be contradictory. The ALJ's decision refers to Ms. Vivas' testimony that her pain is "sometimes so severe that she cannot sleep" and that "she takes Tylenol with codeine for her pain and that a side effect is sleepiness." Although the ALJ appears to believe that these statements reveal an "inconsistency" in her testimony, it is not clear why--the statement that her pain sometimes makes it difficult to sleep does not contradict the statement that Tylenol with codeine makes her drowsy, particularly when she takes it during the day. The ALJ also suggests that Ms. Vivas' statement that she has difficulty sleeping is inconsistent with the written statement of Elizabeth Vivas (the claimant's daughter) that Ms. Vivas sleeps seven hours per night. While Elizabeth Vivas does state that the claimant sleeps seven hours per night, she also notes that she "cannot sleep without prescribed sleeping pills because of her back problems." This is consistent with the testimony that Ms. Vivas provided at her hearing and with her prehearing reports
 The ALJ's decision also found a contradiction between the claimant's testimony that she is able to sit for no longer than one hour and her testimony that she spends much of the day listening to the radio, watching television, and reading the Bible and newspaper. In fact, Ms. Vivas testified that she could sit for approximately an hour and a half, not an hour, at a time. At any rate, the ALJ does not explain why he believed this testimony to be in conflict with her testimony that she listens to the radio much of the time, and that she also watches television and reads the Bible and newspaper--Ms. Vivas did not state that she sits for more than one hour at a time while engaged in these activities and, in fact, did not testify as to whether she is erect, supine, or in some other position while listening to the radio, watching television, and reading. Nor is Ms. Vivas' statement, corroborated by her daughter, that she takes short walks in conflict with the statement that she experiences pain if she sits or stands for prolonged periods.
 Finally, the ALJ refers to Ms. Vivas' testimony at the hearing that she is able to lift as much as 10 pounds, suggesting that this revealed another inconsistency. The ALJ is correct to point out that, in response to one of his questions, Ms. Vivas did testify that the "heaviest object" she could lift is ten pounds. However, the ALJ refers to no statement in the record that conflicts with this testimony.