# In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 03-3615

PEGGY FAST,

*Plaintiff-Appellant,*

*v.*

JO ANNE BARNHART, COMMISSIONER
OF SOCIAL SECURITY,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 02-0625-C-T/L—**John Daniel Tinder**, *Judge.*

---

ARGUED AUGUST 3, 2004—DECIDED FEBRUARY 2, 2005

---

Before POSNER, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Peggy Fast seeks disability in-
surance benefits, alleging that nonexertional mental
impairments, including delusional disorder, depressive
disorder, and paranoid personality disorder, render her
unable to work. The Administrative Law Judge (ALJ)
denied her request on the ground that she is still able to
perform a significant number of jobs within the regional
economy. The district court affirmed, and Fast appeals,
arguing that the ALJ erred because he relied exclusively on
testimony from a Vocational Expert (VE) rather than using
the Medical Vocational Guidelines (commonly known as the
grids) as some kind of binding "framework" for his decision.

Fast's argument that the grids must structure the outcome to this degree is not supported by Social Security regulations, the agency's internal management directives, or relevant judicial decisions. We therefore affirm.

**I**

At the time of her benefits hearing in July 1999, Fast was fifty-four years old. She held undergraduate and masters degrees in administrative counseling. Before 1998, when Fast alleges that she became disabled from stress and psychosis, she worked as a professional counselor, teacher, administrator, and guidance counselor. In 1999, Fast was hospitalized for treatment of a delusional disorder and paranoid personality disorder. Post-hospitalization progress reports between October 1999 and April 2000 state that despite a couple of setbacks, Fast was consistently improving, was able to maintain a job, was tolerating medication, and refused counseling.

Fast testified that she had been working part-time for a year-and-a-half as a cashier, was occasionally substitute teaching, and was planning to begin a new job at CVS Pharmacy as a cashier and pharmacy assistant. She also testified that she was working on her doctorate. Fast has a driver's license and a car, lives alone and takes care of her own personal needs, and spends her time going to work, reading, visiting the library, listening to the radio, watching TV, walking, cleaning her apartment, and fixing meals.

The ALJ asked a VE whether a person with Fast's limitations could perform work that exists in significant numbers in the region. The VE testified that even though Fast could not perform her past work, she could perform other work, including the positions of bookkeeper/ accountant/auditor (1,750 jobs in the region), records clerk (140 light and 69 sedentary jobs in the region), production coordinator (129 medium, 258 light, and 129 sedentary jobs

in the region), traffic/shipping/receiving clerk (2,063 jobs in the region), stock/inventory clerk (1,027 medium and 2,019 light jobs in the region), and material/recording/ scheduling clerk (58 medium, 337 light, and 54 sedentary jobs in the region).

Applying the normal five-step analysis, see 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920, the ALJ found that Fast has severe impairments supported by objective medical evidence (step one) that significantly interfere with her ability to perform her past work (step two). He found that she has no functional limitations, and that therefore her impairments do not meet or equal any impairments enumerated in the "Listing of Impairments" (step three). See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 416.920 (a)(4)(iii). Finally, he found that although she could not return to her past work (step four), she could perform other jobs that exist in significant numbers in the state of Indiana (step five), and was therefore not disabled. In reaching his conclusion, the ALJ relied on the VE's testimony that Fast could perform simple, repetitive, low stress work that requires no more than superficial interaction with others, and that such jobs exist in significant numbers in the state of Indiana. The appeals council denied Fast's request for review, rendering the ALJ's decision final. Fast sought review in the district court, arguing that the ALJ erred at step five of the analysis because he did not use the grids as a "framework" in reaching his conclusion. The district court disagreed and affirmed the ALJ's decision denying benefits.

## II

Before this court, Fast contends again that the ALJ erred at step five of his analysis because he should have used the grids as a "framework," by which she means that the ALJ should have compared the number of jobs available to a person considered disabled under the grids with the number

of jobs that the VE testified she could perform. She claims that Social Security rules and regulations, as well as a case from the Ninth Circuit, call for this approach. Fast believes that such a comparison in her case would lead to a finding of disability because the number of jobs that the VE said that she could perform (1,600 jobs) is fewer than the number of jobs available to a person whom the grids regard as disabled (17,895 jobs). This court reviews the ALJ's legal conclusions *de novo*. See *Old Ben Coal Co. v. Dir., Office of Workers' Compensation Programs*, 292 F.3d 533, 538 (7th Cir. 2003).

At step five of the sequential analysis, an ALJ must determine (taking into account the step four finding that the claimant can no longer perform her past work) whether the person can do any other work that exists in the national or regional economy. See 20 C.F.R. § 404.1520(a) (4)(v), (e); 20 C.F.R. § 416.920(a)(4)(v), (e). To this end, the ALJ may use the grids to determine whether other jobs exist in the national or regional economy that a claimant can perform. The grids, however, generally take account only of exertional impairments. Exertional impairments are those that affect the claimant's "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b). Nonexertional impairments—such as depression, anxiety, difficulty concentrating or remembering—are defined as all other impairments that do not affect a claimant's ability to meet the strength demands of jobs. 20 C.F.R. § 404.1569a(c)(1). Where a nonexertional limitation might substantially reduce the range of work an individual can perform, use of the grids is inappropriate and the ALJ must consult a VE. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) (citing *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994)).

Fast acknowledges that the grids do not apply directly, but she urges that they should nonetheless have been

used as a framework for decision. She contends that 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e) and its corresponding policy statement, SSR 85-15, support her theory because both discuss the use of the grids as a "framework." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2) reads as follows:

> [*W]here an individual has an impairment or combination of impairments* resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone, and if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience *provide a framework for consideration* of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.

20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2) (emphasis added). Similarly, SSR 85-15 states that where a claimant suffers both exertional and nonexertional impairments, the grids may provide a framework for consideration:

> The table rules reflect the potential occupational base of unskilled jobs for individuals who have severe impairments which limit their exertional capacities . . . . *Where individuals also have nonexertional limitations of function or environmental restrictions, the table rules provide a framework for consideration* of how much the individual's work capability is further diminished in terms of any types of jobs within these exertional ranges that would be contraindicated by the additional limitations or restrictions.

SSR 85-15 (emphasis added).

But Fast is not reading either 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2) or SSR 85-15 carefully enough. Both of them address the situation in which someone suffers

from two kinds of impairments—exertional and nonexertional—and they describe how the two are to be handled together. Fast, in contrast, suffers solely from nonexertional limitations. In that situation, both 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e) and SSR 85-15 state that the grids should be given "consideration" only. If a nonexertional limitation substantially limits a claimant's ability to perform other work, reliance on the grids is improper. See *Zurawski*, 245 F.3d at 889 (citing *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994)); *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993*)* (citing *Warmoth v. Bowen*, 798 F.2d 1109, 1112-13 (7th Cir. 1986) (per curiam)). As the district court pointed out, the ALJ properly considered whether Fast could perform other work, because he "made specific reference to Grid Rule 204.00; [and he] recognized the Grid was not controlling and sought another vocational source" in the form of VE testimony.

Next, Fast contends that *Swenson v. Sullivan*, 876 F.2d 683 (9th Cir. 1989), supports her "framework" approach. In *Swenson* the Ninth Circuit reversed a finding by an ALJ that a claimant with a combination of exertional and nonexertional disabilities was not disabled, even though he was deemed disabled under the grids based on his exertional impairments alone. *Id*. at 689. The court "require[d] the Secretary to reject vocational testimony that is inconsistent with the grids' overall framework." *Id*. at 688. Fast argues that her case is analogous because the ALJ disregarded the grids and relied on VE testimony alone.

Once again, however, Fast is overlooking a critical distinction. In *Swenson*, the claimant's exertional limitations alone *supported* a finding of disability under the grids, but the ALJ nonetheless relied on the VE's testimony to reach a result inconsistent with the grids. Fast's limitations, by contrast, could not support a finding of disability under the grids, because she has no exertional limitations.

There is nothing in the ALJ's result here that conflicts with the result in *Swenson*.

Fast's only other authority for using the grids as a "framework" comes from the Social Security Administration's instructions to employees who make initial disability determinations, which are found in the Programs Operations Manual System (POMS). The introduction to the POMS rule to which Fast refers states that its purpose is to "elaborate[ ] on the guidance" for using the grids as a "framework for adjudication." POMS DI 25025.001(A). She argues that the use of the word "framework" in the introduction to this section of the POMS supports her contention that the grids should also be used as a framework where solely nonexertional limitations exist. More than that, she says, this statement in the POMS should be given deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

Fast's argument founders on the text of the POMS, which states in the subsection on solely nonexertional limitations that the grids should merely "provide guidance" in a disability determination. POMS DI 25025.001(B)(4)(c). Her *Chevron* theory also lacks merit. Even if there were language in the POMS that supported the idea of grids-as-"framework" (and we cannot find any unequivocal statement to that effect), such a reading would create a conflict with 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e) and SSR 85-15. See *Chevron*, 467 U.S. at 844; *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 256-58 (1991) (*overruled on other grounds*) (holding that EEOC's internal guidelines should not be given deference where they contradicted language in subsequently enacted statute).

Finally, Fast urges us to overrule *Lee*, 988 F.2d 789 at 793. Her problem with *Lee* is that this court did *not* insist there that the ALJ use the grids as a framework. What the *Lee* opinion focused on was whether "a claimant's non-exertional limitations restrict the full range of employment

opportunities at the level of work that he or she is capable of performing." In such a case, we said, the use of the guidelines is precluded. But, just as in this case, we went on to hold that the claimant was not disabled based on VE testimony that 1,400 jobs existed in the regional economy that the claimant could perform despite his exertional limitations. *Id.* at 793-94.

We see no reason to overrule *Lee.* Fast's rather odd argument that the grids must somehow be used as a framework has no support, and it conflicts with the common-sense rule that where the grids do not address a particular problem, the ALJ is entitled to rely on the expert testimony of a VE. We therefore AFFIRM the judgment of the district court upholding the ALJ's determination that Fast is not entitled to disability benefits.

A true Copy:

       Teste:

                 _____

                 *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*