NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 10, 2010
Decided January 7, 2011

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 10-2332

| | |
|---|---|
| JUDITH K. STANLEY, <br> *Plaintiff-Appellant*, | Appeal from the United States District <br> Court for the Central District of Illinois. |
| *v.* | No. 08-3240 |
| MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br> *Defendant-Appellee.* | Jeanne E. Scott, <br> *Judge*. |

**O R D E R**

Judith Stanley, who claims that she is disabled by back pain and depression, appeals from a district court order upholding the Social Security Administration's denial of disability insurance benefits. An administrative law judge concluded that she was not disabled because she had the residual functional capacity to work in occupations that account for a significant number of jobs in Illinois. Stanley argues that because she can work in fewer occupations than some claimants who would be classified as disabled under the Medical-Vocational Guidelines tables, she too is disabled. Because substantial evidence supports the ALJ's conclusions that Stanley can work in a significant number of jobs, and the ALJ committed no legal errors, we affirm the district court's judgment.

Stanley applied for disability and disability insurance benefits, alleging that back pain and depression rendered her disabled in 2003, at age 49, when she stopped working as a kitchen assistant at a high school.  Her back pain began after she slipped on a wet floor and aggravated preexisting injuries to her back from two prior workplace accidents. Stanley also suffered from depression that she attributes to the murder of her son in 2001. She testified before an administrative law judge that she could not work because her back pain made it difficult for her to sit or stand for very long and her depression limited her ability to concentrate.  She also furnished medical records documenting her degenerative disc disease and depression.

The ALJ also heard testimony from a vocational expert.  The expert testified that a hypothetical worker limited to simple (two- to three-step), unskilled, light or sedentary jobs, could work in the following occupations in Illinois: commercial cleaner (11,051 jobs), hotel room cleaner (15,635 jobs), production inspector (596 jobs), production assembly worker (2,993 jobs), industrial sorter (2,033 jobs), and hand packager (830 jobs).  The expert explained that limiting a worker to tasks with two- to three-step instructions would "significantly compromise" the number of available "occupations" in the light work category and would exclude some occupations in the sedentary category like ticket checker, telephone interviewer, and general office clerk .  When questioned by Stanley's attorney, the expert testified that fewer than 200 occupations are available to a worker who is limited to light or sedentary unskilled work involving no more than two- to three-step instructions.

The ALJ made both medical and vocational findings; Stanley has not challenged the medical findings on appeal.  Citing Stanley's undisputed medical records and testimony, the ALJ found that Stanley was impaired by degenerative disc disease and depression, which in combination were severe but did not qualify as a disability in the Social Security regulations.  The ALJ next found that Stanley had the residual functional capacity to perform only unskilled light or sedentary work with two- to three-step instructions, and was thus unable to perform any of her past relevant work.  The ALJ then considered Stanley's residual capacity, age, education, and work experience together with the rules for the Medical-Vocational Guidelines tables, noting that those rules would have directed that Stanley was not disabled if her only impairments were exertional.  Because of her non-exertional limitation of depression, the ALJ found that she was further restricted to jobs involving just two- to three-step tasks.  The ALJ next relied on the vocational expert's testimony to determine Stanley's available work.  Based on that testimony, the ALJ found that she could still work as a commercial cleaner, hotel room cleaner, pari-mutual ticket checker, telephone interviewer, general office clerk, assembler, production inspector, industrial labor sorter, or hand packager.  These occupations account for over 40,000 jobs in

Illinois, which the ALJ found to be a significant number and led him to conclude that Stanley was not disabled.

After the Appeals Council denied Stanley's request for review, Stanley sought review in district court, arguing that the ALJ did not follow the policy statements in SSR 83-14. These statements refer to the Medical-Vocational Guidelines, which designate some people as disabled or not depending on their exertional limitation, age, education, and work experience. When a claimant has both exertional and non-exertional limitations, the Guidelines do not specify an outcome, so the policy statements require the ALJ to use the Guidelines as a "framework" for the decision. Under those Guidelines, a claimant with Stanley's age, education, and work experience, but limited to only unskilled *sedentary* jobs, is deemed disabled. Stanley maintained that, using the Guidelines as a framework, the ALJ should have found her to be disabled because she could work in fewer than 200 occupations, the approximate total number of occupations that, Stanley maintains, the Social Security Administration estimates is available to unskilled sedentary workers.

The district court granted judgment for the Commissioner, ruling that the ALJ correctly used the Guidelines as a framework, and that substantial evidence supported the conclusion that Stanley could work at a significant number of jobs in Illinois. The court acknowledged that the ALJ misstated that Stanley could adjust to work as a ticket checker, telephone interviewer and general office clerk, as the vocational expert testified that a limitation to three-step tasks would rule out such occupations. But the court held that the misstatement was harmless because the other occupations still available to Stanley account for over 26,000 light work jobs, which is a significant number.

Because the Appeals council denied Stanley's request for review, the ALJ's ruling is the final decision of the Commissioner of Social Security. *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008). We review that determination directly, rather than deferring to the district court. *Elder v. Astrue,* 429 F.3d 408, 413 (7th Cir. 2008). In reviewing the ALJ's decision, we examine whether substantial evidence supports the ALJ's decision. 42 U.S.C. § 405(g); *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The ALJ need not specifically address all the evidence, but must provide a "logical bridge" from the evidence to the conclusion. *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a person must "not only [be] unable to do his previous work, but [must be unable], considering his age, education,

and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). "'[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* We have held that when a person can perform 1,000 or more jobs, then work exists in "significant" numbers. *Liskowitz,* 559 F.3d at 743; *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993).

On appeal Stanley reiterates that the ALJ ignored the Commissioner's directive to use the Medical-Vocational Guidelines as a "framework" for evaluating whether the work that a claimant with both exertional and nonexertional limitations can perform is significant. SSR 83-14, 1983 WL 31254, at *3 (1983). She correctly observes that a hypothetical person of her age, education, and work experience, but limited to just *sedentary* work, would be deemed disabled under the Guidelines, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.14 (2009). Stanley asserts that, despite being disabled, this hypothetical person could work in 200 occupations, which is more than are available to her. Stanley argues that the ALJ should have drawn this comparison and either deemed her disabled or explained why the comparison would not yield a finding of disability. Not doing so expressly, she says, leaves us unable to conclude that the ALJ used the Guidelines as a framework for decision-making.

Stanley's argument falters because she assumes, incorrectly, that 200 is the number of occupations available to claimants deemed disabled by the Guidelines under the sedentary work table. *See* SSR 83-14, 1983 WL 31254, at *6. Instead, 200 is the *total* number of occupations at the sedentary exertion level. The range of sedentary occupations available to someone considered disabled under the Guidelines (based on additional, job-limiting factors of age, education, and work experience) is necessarily much narrower. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00; *Haynes v. Barnhart*, 416 F.3d 621, 627 (7th Cir. 2005). Her conclusion that she can work in fewer occupations than claimants deemed disabled is thus unsubstantiated.

When, as here, the Guidelines do not dictate a finding of "disabled" or "not disabled," then an analogy to the Guidelines is just one factor that the ALJ should consider, together with testimony from a vocational expert and any other relevant evidence. *See Haynes*, 416 F.3d at 627. Here, the ALJ correctly determined that the Guidelines did not dictate a result, obtained testimony from a vocational expert specifying that Stanley could perform over 26,000 jobs in several occupations, and permissibly concluded that the number of jobs available to Stanley was "significant." *See Liskowitz*, 559 F.3d at 743, *Lee*, 988 F.2d at 794. The ALJ was required to do no more. *See* SSR 83-14, 1983 WL 31254, at *6; *Liskowitz*, 559 F.3d at 739; *Schmidt v. Astrue,* 496 F.3d 833, 845-46 (7th. Cir. 2007).

Stanley cites a Ninth Circuit decision holding that a vocational expert's testimony that the claimant could perform fewer jobs than a hypothetical person deemed disabled under the Guidelines contradicted his testimony that the claimant could perform a significant number of jobs, requiring a remand to the ALJ. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989). But here the expert did not contradict himself. He testified only that Stanley was limited to fewer than 200 occupations, not that she could work in fewer occupations than someone who is disabled. Moreover, in *Swenson*, the expert compared the number of *jobs* the claimant could perform with the number available to a person deemed disabled by the Guidelines. *Swenson*, 876 F.2d at 689. Stanley argues for comparing the number of *occupations*, but such a comparison would be misleading when, as here, the available light-exertion occupations include substantially more jobs than the sedentary ones.[1] Substantial evidence thus supported the ALJ's decision that Stanley was not disabled: The number of available jobs exceeds the threshold for significance and her argument that the ALJ should have focused on occupations instead of jobs is contrary to precedent. *See Liskowitz*, 559 F.3d *at* 743; *Lee*, 988 F.2d at 794.

Last, Stanley argues that the ALJ erred by not addressing the vocational expert's testimony that limiting her to three-step tasks "significantly compromised" her occupational base." But the ALJ *did* address that testimony when he stated that Stanley's "ability to perform all or substantially all of the requirements of [light] work has been impeded by additional limitations." Even after taking that limitation into account, the expert explained, and the ALJ accepted, that a person with Stanley's residual functional capacity could still perform work in occupations encompassing tens of thousands of jobs in Illinois. In relying on the evidence that a significant number of jobs were available to Stanley, the ALJ built a logical bridge from the expert's testimony to the conclusion that Stanley was not disabled

We therefore AFFIRM the judgment of the district court.

---

[1]According to the vocational expert, the two light occupations included a total of 26,686 jobs in Illinois while seven sedentary occupations totaled only 13,737.