Khalilah I. RASHAD, as mother and guardian ad litem of Khamilah A. Brisker–Rashad, Plaintiff–Appellant,

v.

Louis W. SULLIVAN,* Secretary of Health and Human Services, Defendant–Appellee.

No. 89–35521.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1990.

Decided May 18, 1990.

---

* Dr. Louis W. Sullivan has been substituted for Otis R. Bowen pursuant to Fed.R.App.P. 43(c)(1).

Lembhard G. Howell, Seattle, Wash., for plaintiff-appellant.

Ben A. Porter, Asst. Regional Counsel, Dept. of Health and Human Services, Seattle, Wash., for defendant-appellee.

Before WRIGHT, POOLE and BRUNETTI, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

We review an administrative law judge's finding that Khalilah Rashad did not before 1985 attempt to file an application for child's insurance benefits under 42 U.S.C. § 402(d)(1) for Khamilah Brisker–Rashad.

## BACKGROUND

John Brisker, a former professional basketball player, went to Africa to set up an import-export business. He disappeared there and has not been heard from since April 1978.

In June 1985, Khalilah Rashad applied for child's insurance benefits for Khamilah, daughter of Brisker and Rashad. After the child was awarded benefits commencing in December 1984, Rashad filed a Request for Reconsideration on her behalf, contending that benefits should have been awarded from April 1978. That request was denied on the basis that Social Security regulations limit retroactive benefits to the six months prior to the date an application is filed. She requested a hearing before an ALJ, again arguing that benefits should be awarded from April 1978.

At the hearing, Rashad argued that the Social Security Administration was estopped from denying that she filed an earlier application in June 1980. She alleged that in June 1980 she became convinced of Brisker's death after reading a Seattle newspaper article about him. She alleged that, shortly thereafter, she attempted to obtain insurance benefits for her child but that a Social Security employee refused to allow her to file a claim and told her to file when she had proof of Brisker's death.

The ALJ did not consider the estoppel argument because he found that Rashad did not attempt to file in 1980. He affirmed the Secretary's determination. The Appeals Council denied review and the district court adopted the magistrate's Report and Recommendation which again affirmed the Secretary's determination.

## ANALYSIS

The Social Security Act provides benefits for dependent children of deceased wage earners who are fully insured at the time of death. 42 U.S.C. § 402(D)(1)(A). An applicant must file a written application to become eligible for benefits, 20 C.F.R. § 404.603, and the filing date determines when benefits may be received. 20 C.F.R. § 404.621(a)(1)(ii). They may be granted for up to six months before the date on which the application was filed. *Id.*

Rashad argues that benefits should be based on her June 1980 attempt to file rather than her 1985 filing. She alleges that, because she attempted to file an application but was rebuffed by a Social Security Administration employee, the Secretary should be estopped under *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), from arguing that she did not apply for benefits in June 1980.[1]

---

1. In *Hansen*, the claimant had asked a representative of the Social Security Administration if she was eligible for mother's insurance benefits. Because he told her erroneously that she was not eligible, she failed to file an application for benefits. *Hansen*, 450 U.S. at 786, 101 S.Ct. at 1469. The Court considered if the representa-tive's erroneous statements estopped the Secretary from denying retroactive benefits for the time she was eligible for them but had not filed a written application. *Id.* It found that the Secretary was not estopped from requiring that a claimant file a written application because the representative's actions fell "far short" of con-

■ To resolve the question whether Rashad did attempt to file a prior application the ALJ was required to assess her credibility. That assessment must be given great weight. *Hudson v. Bowen,* 849 F.2d 433, 434 (9th Cir.1988) (citing *Nyman v. Heckler,* 779 F.2d 528, 531 (9th Cir.1985)). The ALJ may, as in other cases where credibility assessments are necessary, disregard self-serving statements if they are unsupported by objective evidence. *See Hudson,* 849 F.2d at 434 (ALJ free to disregard self-serving statements that cannot be verified in determining whether a claimant has spent or retained excess resources) (citing *Taylor v. Heckler,* 765 F.2d 872, 876 (9th Cir.1985)).

■ We require an explicit credibility finding whenever the claimant's credibility is a critical factor in the Secretary's determination. *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981). That finding must be supported by a specific, cogent reason for the disbelief, *id.* (citing *Stuart v. Califano,* 443 F.Supp. 842, 848 (W.D.Mo.1978)), and the testimony may "not be entirely discounted simply because there was a lack of objective findings." *Hudson,* 849 F.2d at 434–35 (citations omitted).

■ Rashad contends that the ALJ failed to provide specific cogent reasons for disbelieving her testimony that she attempted to file in 1980. We disagree. Although the ALJ thought it likely that Rashad spoke with a Social Security representative, he did not believe her statement that the representative "would not let me file," because the representative had a "negative reaction" to her extramarital relationship with Brisker.[2]

The ALJ made an explicit finding that Rashad's testimony was not credible and he supported it with a specific, cogent reason for his disbelief. He did not credit her testimony because he believed that if she had made an attempt to file in June 1980:

it would have surfaced long prior to the hearing in this manner in some form other than an affidavit by the claimant's mother submitted on the day of the hearing [eight years later]. There simply have been too many opportunities for such evidence to appear if in fact it existed, as this matter has been before the administration, press and civil courts for nearly 10 years.

(January 26, 1988 decision by ALJ at 4).

■ We find substantial evidence to support the ALJ's finding that Rashad was not credible because, in spite of many opportunities, she failed to allege that she had made an earlier attempt to file until the day of the hearing before the ALJ.[3] *See Hudson,* 849 F.2d at 435 (record supports ALJ's credibility determination); *Bilby v. Schweiker,* 762 F.2d 716, 718 (9th Cir.1985) (citing *Kail v. Heckler,* 722 F.2d 1496, 1497 (9th Cir.1984)). In her Request for Reconsideration of the original decision awarding benefits from December 1984, she did not allege that she had attempted to file in

duct that would raise a question of estoppel. *Id.* at 790, 101 S.Ct. at 1471; *see also Morgan v. Heckler,* 779 F.2d 544, 546 (9th Cir.1985) (estoppel not applicable because there was no affirmative misconduct).

Here, Rashad argues that the employee's actions amounted to affirmative misconduct. Because we affirm the ALJ's finding that Rashad did not attempt to file in 1980, we do not consider if *Hansen* would apply.

Rashad also contends that Pub.L. No. 101–239, § 10302 (to be codified at 42 U.S.C. § 402(j)(5)), Authority for Secretary to Take into Account Misinformation Provided to Applicants in Determining Date of Application for Benefits, supports her estoppel argument. This section is not applicable here. The provision she cites says it "shall apply with respect to misinformation furnished *after December 1982 and to benefits for months after December 1982.*"

(emphasis added) She claims that a Social Security employee furnished misinformation in 1980 which is before, not after, December 1982.

2. Rashad also alleged that the Social Security representative told her to wait until seven years had passed and the Secretary would then presume Brisker dead under 20 C.F.R. § 404.721.

3. Rashad says that the ALJ based his credibility determination on a lack of corroborating evidence. Although such evidence would have helped her, the ALJ did not credit her testimony because, at a time when she knew of the importance of the filing date, she failed to mention that she had made an earlier attempt to file. He found her failure to bring forth such important evidence until the day of the hearing, without a persuasive explanation, to be unbelievable.

1980. Instead, she claimed she was entitled to benefits from 1978 because claimants of Benjamin Taylor, who disappeared with Brisker, had been awarded benefits from 1978.

After the Secretary denied the Request for Reconsideration, Rashad requested a hearing, but did not mention a prior attempt to file in 1980 and checked the box on the Social Security Request for Hearing form that indicated she had no additional evidence to submit. Only on the hearing day did she submit an affidavit and testify that she had made an attempt to file in 1980.

Although Rashad argues that she had no other opportunity to present such evidence, we disagree.[4] Even assuming that Rashad did not understand the significance of her attempted filing until after the child received benefits commencing in December 1984, she had ample opportunity in her Request for Reconsideration and Request for a Hearing to raise this evidence both in the forms she filed with the Social Security Administration and in her attorney's correspondence to it. The Social Security Administration even sent letters to her and her attorney asking if they had additional evidence to submit and to please notify it if they did.

AFFIRMED.

---

4. Although Rashad suggests that the ALJ erred in his statement that there was a "previous hearing before an Administrative Law Judge concerning the death of the wage earner," we note that the ALJ did not state that the hearing had been in this case. To the contrary, he "noted that the matter has been in litigation in one form or (or forum) for a number of years" and he attempted to search the entire record in this and related proceedings for evidence of an attempted filing. Although there had been no prior hearing in this case, there was a hearing before an ALJ in the case of D. Michele Brisker, Brisker's wife, and MiJohni, his daughter. There, the ALJ determined that Brisker's death had been established. In addition, Rashad had testified in May Taylor's hearing in which the ALJ found that John Taylor's death had been established. When asked why she did not mention a prior filing at this hearing, she said she was never asked. The ALJ's statement was correct.