Victoria V. SHORE, Plaintiff,

v.

John J. CALLAHAN, Acting Commissioner, Social Security Administration, Defendant.

Civil No. 96–1752–RE.

United States District Court,
D. Oregon.

Aug. 27, 1997.

Alan Stuart Graf, Swanson, Thomas & Coon, Portland, OR, for Plaintiff.

Kristine Olson, U.S. Attorney, District of Oregon, Craig J. Casey, Assistant U.S. Attorney, Portland, OR, Renee C. McFarland, Special Assistant U.S. Attorney, Seattle, WA, for Defendant.

## OPINION

REDDEN, District Judge.

Claimant, Victoria Shore, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) benefits. For the reasons set forth below, the Commissioner's decision is reversed and remanded for payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for a period of disability and DIB on April 8, 1992 (tr. 80–83). The application was denied initially (tr. 110–11) and upon reconsideration (tr. 139–141). After a timely request for a hearing (tr. 142–143), plaintiff, represented by an attorney, appeared and testified before an Administrative Law Judge (ALJ) on November 10, 1994 (tr. 30–79).

On October 27, 1995, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act, and therefore, not entitled to DIB (tr. 9–22). This became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ (tr. 4–5). 20 C.F.R. § 404.981 (1996).

## STATEMENT OF THE FACTS

At the time of the hearing, plaintiff was 41 years old, had a high school education plus two years of college, and had past relevant work experience as a clerical worker (tr. 35, 151). Plaintiff alleges disability since August 20, 1991, due to chronic fatigue syndrome (tr. 146).

Plaintiff's testimony at the hearing was that she sleeps 10–12 hours per night, naps one to three hours per day because of fatigue (tr. 10–11), has taken medication for her illness but experiences reactions to the medication (tr. 38), was prescribed an anti-depressant (tr. 39), on bad days she feels like she is going to faint after standing for fifteen minutes (tr. 42), she has three or four bad days a week (tr. 42), she has problems with exposure to chemicals or perfumes (tr. 42), she does not do housework (tr. 44), she was fired from work (tr. 16), and cannot return to work due to muscle aches, confusion and headaches (tr. 47).

Plaintiff saw treating psychologist Anneke Hathaway on November 11, 1988, for work related stress (tr. 184). Dr. Hathaway administered two MMPIs on November 21, 1988, and September 16, 1991. *Id.* Both tests produced scores excessively high in both depression and anxiety. The profiles were found to be valid (tr. 188). Dr. Hathaway found the plaintiff's global assessment of current level of functioning (GAF) to be 40. A score of 40 means, in part, a "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., is unable to work)." American Psychiatric Assn, *Diagnostic and Statistical Manual of Mental Disorders* (DSM–IV) (4th ed.).

On August 9, 1989, Dr. Hathaway described plaintiff as,

a reliable historian and shows a great deal of consistency in the information she has provided to me over the past several months. She is not someone who exaggerates her symptoms, but rather downplays things which at times may give her the impression of being guarded.

Tr. 193.

On October 1, 1991, Dr. Hathaway reported that:

even though Mrs. Shore has scrupulously followed the directions of her physician, psychologist and physical therapist, she has not made the expected recovery. In fact, a gradual increase in symptoms has occurred.

Tr. 184. Dr. Hathaway went on:

a significant decrease in functioning occurred after the company moved which added additional stress to the patient. It is my opinion that Mrs. Shore will need to have 6–12 months off to make a real recovery which would enable her to return to work.

Tr. 185.

As of October 1, 1991, Dr. Hathaway's diagnosis was generalized anxiety disorder and psychological factors effecting her physical condition (tr. 186).

The plaintiff was also being treated by Dr. Richard Huemer (tr. 184). On March 12, 1992, Dr. Huemer wrote a letter to the Oregon Department of Human Resources confirming that

[plaintiff] has an illness called Post Viral Chronic Fatigue Syndrome also known as Chronic Fatigue and Immune Deficiency Syndrome (CFIDS) and is currently disabled to the extent that she is unable to perform any gainful activity due to her medical condition.

Tr. 201.

Dr. Huemer also stated that,

although depression is common in CFIDS, it is the result of the illness, not its etiology, and may actually contribute to the immunologic abnormalities which allow increased viral activity.

Tr. 204–05.

Dr. Huemer found that plaintiff was disabled from her previous occupation "or any occupation" beginning June 1991 (tr. 205–06). Dr. Huemer stated that the prognosis for her disability is that it will continue up to three years with the "possibility of prolonged disability beyond that time." *Id.* Dr. Huemer noted that available therapy will not "cure" plaintiff's condition, but it will help in "reducing the symptoms of this syndrome and may

speed the development of improved function." *Id.*

On August 28, 1992, Dr. Huemer stated in a letter that since January 15, 1992, plaintiff was diagnosed with CFS. He stated that plaintiff met the major and minor criteria for the diagnosis, as established by the Center for Disease Control. He stated that she was disabled as a result. He named the following conditions as contributing to her disability: metal toxicity (aluminum), multiple allergies, trace mineral deficiencies, candidiasis, and fibrositis (tr. 198). On September 2, 1992, he noted that plaintiff was receiving some benefit from physical therapy. In November 1992, he reported that physical therapy was helping, although not dramatically (tr. 209).

In April 1993, plaintiff's medical records indicated reports of muscle ache, fatigue (tr. 249), fibrositis, tension, and low blood pressure (tr. 252).

## STANDARD OF REVIEW

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir.1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.1986).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir.1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A)

The Secretary has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140, 107 S.Ct. at 2290–91, 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41, 107 S.Ct. at 2291; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.; see* 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. *Yuckert*, 482 U.S. at 141, 107 S.Ct. at 2291.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42, 107 S.Ct. at 2291–92; *see* 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

The ALJ applied the five-step sequential evaluation process to determine first, that plaintiff had not engaged in substantial gainful activity since August 20, 1991; second, that the medical evidence establishes that plaintiff has a diagnosis of depression or affective disorder which results in an impair-

ment which is not severe. The ALJ also found that plaintiff has a diagnosis of chronic fatigue syndrome which results in a severe impairment; and third, that no impairment experienced by plaintiff, either singly or in combination with any other deficit, is attended by clinical or laboratory findings which meet, or medically equal, the criteria for any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (1996) (tr. 18). At the fourth level of the evaluation, the ALJ found that plaintiff had the residual functional capacity for sedentary work comprised by specific exertional and nonexertional limitations. He further found that plaintiff is most likely capable of performing her past relevant work. At the fifth level of evaluation the ALJ found that plaintiff has the above residual functional capacity, at 42 is a "younger individual," and has in excess of a high school education. Therefore, he found plaintiff not disabled.

■ The ALJ gave insufficient reasons for rejecting the opinion of treating physician, Dr. Huemer. As a general rule, more weight should be given to the opinion of a treating source than to the opinions of non-treating physicians. *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir.1987). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan,* 923 F.2d 1391, 1396 (9th Cir. 1991). "Clear and convincing" reasons are also required to reject the treating doctor's ultimate conclusions. *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating doctor's opinion without providing "specific and legitimate" reasons supported by substantial evidence in the record for doing so. *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983).

■ Here, the ALJ incorrectly rejected Dr. Huemer's opinion because there were no objective medical tests that corroborated plaintiff's symptoms. There is no statutory requirement that an impairment be proved by "objective" testing. *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir.1975). Specifically, regarding CFS, "there is no· 'dipstick'

laboratory test for chronic fatigue syndrome" and "we are unable to find any suggestion in [CFS cases] that this disease—or any other disease—is per se excluded from coverage because it cannot be conclusively diagnosed in a laboratory setting." *Sisco v. U.S. Dept. of Health and Human Services,* 10 F.3d 739, 744 (10th Cir.1993).

Treating physician Dr. Huemer relied on the "operational diagnosis technique used by the medical community" in his analysis of plaintiff's disease (tr. 201–06).

The ALJ's reliance on Dr. Krammer's testimony (who never examined the plaintiff) to reject Dr. Huemer's findings did not reach the threshold of either clear and convincing regarding Dr. Huemer's ultimate conclusion, nor was it specific and legitimate concerning Dr. Huemer's findings of severity of impairment.

■ Further, the ALJ did not give specific reasons that were clear and convincing for rejecting plaintiff's complaints. The ALJ must provide "specific, cogent reasons for the disbelief." *Rashad v. Sullivan,* 903 F.2d 1229, 1231 (9th Cir.1990). Unless there is affirmative evidence showing that the claimant is malingering, the government's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir.1989). I find no evidence in the record that plaintiff was a malingerer. In fact, psychiatrist Anneke Hathaway stated that plaintiff is:

a reliable historian and shows a great deal of consistency in the information she has provided to me over the past several months. She is not someone who exaggerates her symptoms, but rather downplays things which at times may give her the impression of being guarded.

Tr. 193.

## CONCLUSION

The ALJ's decision is not based on substantial evidence, therefore, this case is reversed and remanded for payment of benefits.

## ORDER

The Commissioner's decision is not supported by substantial evidence, therefore, this case is reversed and remanded for payment of benefits.

IT IS SO ORDERED.